Ozel CONLEY et al., Appellants,

v.

Robert E. DAUER et al., Appellees.

No. 71–1011.

United States Court of Appeals,
Third Circuit.

Argued Dec. 14, 1971.

Decided April 17, 1972.

As Amended on Denial of Rehearing
En Banc June 27, 1972.

R. Stanton Wettick, Neighborhood Legal Services, Pittsburgh, Pa., for appellants.

Eugene B. Strassburger, III, Asst. City Sol., Pittsburgh, Pa., for appellees.

Before VAN DUSEN and HUNTER, Circuit Judges, and LAYTON, Senior District Judge.

## OPINION OF THE COURT

HUNTER, Circuit Judge.

Appellants are indigents who have been charged with violations of the criminal laws of Pennsylvania and who are unable to afford or otherwise obtain

counsel at their preliminary hearings. They brought this § 1983 [1] Civil Rights action on behalf of themselves and others similarly situated [2] against appellees, the District Attorney of Allegheny County, Pennsylvania, and five City of Pittsburgh magistrates, claiming that their 6th and 14th Amendment rights as established by Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), are being systematically violated. Specifically, they challenge the Magistrates' practices of (1) refusing to advise indigents that they are entitled to counsel at preliminary hearings; (2) refusing to appoint counsel where requested; and (3) conducting preliminary hearings in the absence of counsel. In addition, they challenge the District Attorney's practice of presenting indictments, scheduling trials, and conducting criminal prosecutions against indigents who were not represented by counsel at preliminary hearings after June 22, 1970, the effective date of *Coleman, supra*.[3]

Plaintiffs sought declaratory relief in the nature of a ruling that the stated practices were unconstitutional, as well as a permanent injunction (1) enjoining the District Attorney from proceeding to trial in any case in which an indigent neither was represented by counsel at his preliminary hearing nor knowingly and intelligently waived that right, and (2) restraining the Magistrates from conducting any further preliminary hearings without first fully advising indigent defendants of their right to court-appointed counsel and without appointing counsel where requested.

■ A final hearing was held in the District Court on October 19, 1970. The requested declaratory relief was granted. Injunctive relief was denied, however, and plaintiffs appeal that decision. Conley v. Dauer, 321 F.Supp. 723 (W.D. Pa.1970). There is no cross-appeal from the declaratory ruling of unconstitutionality or from any of the other rulings of the District Court.[4]

The facts are not in dispute and are for the most part drawn from the parties' stipulation. In Allegheny County, which encompasses the City of Pittsburgh, indigent criminal defendants are represented at trial either by the Public Defender or private court-appointed counsel. However, only in capital cases are indigents apprised by the presiding

1. 42 U.S.C. § 1983.

2. The District Court found that appellants adequately represented several classes of individuals charged with state criminal offenses. Included is a class comprised of those indigent defendants who have had preliminary hearings without being afforded counsel and who have been bound over to court; a class comprised of all indigent defendants who await preliminary hearings scheduled in the future and, within each such class, persons who are presently confined in jail in lieu of bond and others who have been released on bond.

3. In Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972), the Supreme Court held that *Coleman* would not be applied retroactively.

4. In addition to arguing that injunctive relief was properly denied, Appellee-Magistrates contend that the District Court should have stayed its hand to afford the Pennsylvania courts an opportunity to decide a potentially dispositive question of state law. Appellees indicate the availability of a possible state statutory remedy in Section 7 of the Public Defender Act, 16 P.S. § 9960.7 (1971 Supp.) and argue that a possible interpretation of that Section by the Pennsylvania courts would obviate the necessity of reaching the Federal constitutional question. *See* R.R. Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). Although Section 7 may, in fact, present a question of unclear state law, we agree with the District Court that the resolution of that issue would not obviate the necessity of deciding the federal question. We have in the instant case no question of the susceptibility of Section 7 of a construction by the state court that would "avoid or modify the federal constitutional question." Zwickler v. Koota, 389 U.S. 241, 251, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967); *cf.* Askew v. Hargrave, *supra;* Reetz v. Bozanich, *supra.*

authority of their right to counsel and, in fact, provided free counsel at the preliminary hearing stage. In all other criminal prosecutions, counsel is not provided unless a prima facie case of a defendant's guilt is established at the hearing and the defendant held for further proceedings. *See generally* Pa.R. Crim.P. 120–123, 19 P.S. Appendix; Public Defender Act §§ 6, 7, *supra* n. 4.

This situation is apparently the unfortunate result of the organization and structure of Allegheny County's minor judiciary. Pursuant to the Commonwealth's 1968 Constitutional Convention —which revised the Judiciary Article of the State Constitution—there are now several thousand authorities throughout Pennsylvania who are empowered to preside over preliminary hearings.[5] Thus in Allegheny County alone there are 64 magisterial districts in which preliminary hearings are conducted at numerous localities by some 246 magistrates, justices of the peace, and aldermen.[6]

Although *Coleman* did not decide that a preliminary hearing was constitutionally required, it did hold that when a state utilized the preliminary hearing as a stage of its criminal proceedings, the accused was entitled to counsel. 399 U. S. at 9–10, 90 S.Ct. 1999, 26 L.Ed.2d 387.[7] Further, *Coleman* requires that indigents be provided counsel at *all* preliminary hearings, and not simply in those cases in which a defendant is accused of a capital offense.[8] The Court's clear and unequivocal holding cannot be thwarted by the simple—albeit truthful —assertion that the structure of a county's minor judiciary makes compliance difficult. Nor can that holding be ignored by a county administration[9] which has apparently failed to make even those appropriations which would promptly insure at least partial compliance.[10]

---

5. Pa.Const. Art. 5 § 1 P.S. *See also* Magisterial Districts Act, 42 P.S. § 1301 et seq. (Supp.1971).

6. Included in this figure are 61 District Justices of the Peace, five Magistrates in the City of Pittsburgh and 180 "grandfather" Aldermen and Justices of the Peace, whose terms of office began before the adoption of the Pennsylvania Constitution on April 23, 1968. All are empowered to conduct preliminary hearings.

7. The constitutional necessity and justification for assistance of counsel in criminal cases in general and at the preliminary hearing stage in particular does not require further comment here. *See* Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Coleman v. Alabama, *supra*. It is sufficient to note the Supreme Court's cogent statement in *Coleman, supra*, that the presence of counsel at the preliminary hearing "is essential to protect the indigent accused against an erroneous or improper prosecution." 399 U.S. at 9, 90 S.Ct. at 2003.

8. Although the Alabama preliminary hearing at issue in *Coleman* differs from Pennsylvania's hearing as the latter does not set bail, appellees do not dispute that *Coleman* requires counsel at hearings in Pennsylvania. *See* Commonwealth v. James, 440 Pa. 205, 209, 269 A.2d 898, 900 (1970); Commonwealth v. Brown, 217 Pa.Super. 190, 194 n. 2, 269 A.2d 383, 386 n. 2 (1970), holding that Pennsylvania's preliminary hearing is a "critical stage" at which the accused is entitled to counsel. *See also* Pa.R.Crim. P. 119, 318.

On remand, the appellees may wish to argue that certain offenses *for which preliminary hearings are in fact held* are so petty that counsel is not required. See Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530.

9. Although suit was brought to enjoin appellees, it appears that appropriations for the Public Defender office are controlled by the Allegheny County Commissioners. Appellees, of course, have no control over the Commissioners' inaction.

10. Counsel for appellants stated at oral argument, without contradiction from opposing counsel, that to remedy the situation in the City of Pittsburgh Magistrate's Court—which conducts only those preliminary hearings arising out of arrests by City police—it would merely require the retention of one or two additional attorneys since all City preliminary hearings are conducted in a single courtroom. Approximately half of all preliminary hearings conducted in Allegheny County take place in that courtroom.

The District Court sitting only four months after *Coleman* was decided,[11] quite properly concluded that it could not reasonably expect Allegheny County officials to make the necessary procedural changes within the short time period that had elapsed. It therefore refused to grant injunctive relief.

■ It is now more than 20 months since *Coleman* and County authorities have yet to comply with its mandate. On oral argument, however, counsel for appellees unequivocally stated that changes are imminent.[12] In light of this assertion and subsequent supporting documentation,[13] we do not deem it appropriate to grant injunctive relief at this time.[14] Rather, we remand the case to the District Court for the holding, promptly, of further proceedings to de-

11. The District Court sat October 19, 1970. *Coleman* was handed down on June 22, 1970.

12. On November 22, 1971, (effective December 1, 1971) the Pennsylvania Supreme Court adopted an amendment to Pa.R.Crim.P. 156 which would in effect allow the President Judge of a Pennsylvania Judicial District the discretion to determine what classes of cases necessitate centralized preliminary hearings and would require him to establish such central locations for the holding of those preliminary hearings. The application of the amended rule would, presumably, require the services of fewer attorneys than the current system.

13. We have also been notified by counsel for the appellees that the Local Planning Council of the Governor's Justice Commission has approved a request from the Court of Common Pleas of Allegheny County for the necessary funds to hire twelve additional full time public defenders solely for use at preliminary hearings. Approval by the Justice Commission is pending.

14. The District Court's opinion was handed down prior to the Supreme Court decisions in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); and Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971). These cases, with the exception of *Samuels*, deal with the perplexing problem of when a federal court may appropriately enjoin a pending state criminal prosecution. *Samuels* discussed the circumstances in which a federal court may involve itself in a state criminal proceeding by issuing declaratory relief pursuant to the Declaratory Judgment Act of 1934, 28 U.S.C. § 2201.

As the District Court relied heavily on Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), in granting its declaratory judgment, the subsequent decision in *Samuels* may have called for a different result on appeal had appellees taken a cross appeal from that declaratory judgment. Samuels v. Mackell, *supra*, 401 U.S. at 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). No appeal was taken, however, and declaratory judgment considerations are not before us. Swarb v. Lennox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972); Grove Press Inc. v. City of Philadelphia, 418 F.2d 82, 85 (3d Cir. 1969).

28 U.S.C. § 2202 (1964) authorizes injunctive relief to complement a prior declaratory judgment and is one of the express exceptions to The Federal Anti-Injunction Act, 28 U.S.C. § 2283 (1964). *See also* Cooper v. Hutchinson, 184 F.2d 119, 124 (3d Cir. 1950) (§ 1983 Civil Rights action falls within the "expressly authorized by Congress" exception to § 2283). Section 2202 states:

"Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

Relying on this statutory authority the Supreme Court stated that: "A declaratory judgment can be used as a predicate to further relief, including an injunction." Powell v. McCormack, 395 U.S. 486, 499, 89 S.Ct. 1944, 1952, 23 L.Ed.2d 491 (1969). *See* Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); 6A Moore's Federal Practice § 57.10; Samuels v. Mackell, *supra*, 401 U.S. at 72, 91 S.Ct. 764, 27 L.Ed.2d 688. Although "voluntary compliance with the orders of Federal courts is the norm and *desideratum*," American Law Institute Study of the Division of Jurisdiction Between State and Federal Courts 323 (1969), and although we expect Allegheny County to fully comply with the District Court's declaratory judgment, a decision

termine whether steps have been taken to insure that the *Coleman* mandate will be followed in Allegheny County in the immediate future. Included in the District Court's inquiry should be a determination of the *bona fides* of governmental action as well as a determination of whether the proposed new developments will be instituted and operable forthwith and whether these developments will, in fact, act to remedy the situation. In the event that the District Court finds that necessary steps are not being taken, it shall fashion whatever remedies it deems appropriate, consistent with our holding that *Coleman* must be followed and unjustifiable delay cannot be tolerated.

The case will be remanded to the District Court for further proceedings not inconsistent with this opinion.

Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, MAX ROSENN, JAMES ROSEN and HUNTER, Circuit Judges, and LAYTON, Senior District Judge.

## ON PETITION FOR REHEARING BEFORE THE COURT EN BANC

PER CURIAM:

The petition for rehearing filed by Robert W. Duggan, individually and as District Attorney of Allegheny County, appellee in the above entitled case, having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court en banc, the petition for rehearing is denied.

Chief Judge SEITZ does not desire rehearing only because the defendants did not appeal the judgment.

ALDISERT, Circuit Judge (dissenting opinion Sur Petition for Rehearing).

I dissent from the denial of the petition for rehearing.

In my view, this court should have remanded the proceedings with a direction to dismiss the complaint because the alleged constitutional deprivation—failure of the state to provide counsel for indigents at preliminary hearings—concerns the assertion by each plaintiff of a federal right which may be vindicated in a defense in a single state criminal proceeding. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971).

*Younger, Samuels* and *Boyle,* all decided subsequent to the district court order, provide that federal interference in state prosecutions is severely circumscribed; that "exceptional circumstances" permitting federal equity interference presume a showing of irreparable injury, Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); that the injury must be "showing in the record," and not merely alleged. *Samuels,* 401 U.S. at 68, 91 S.Ct. 764, 27 L.Ed.2d 688, that to overcome the "longstanding public policy against federal court interference with state court proceedings," *Younger,* 401 U.S. at 43, 91 S.Ct. at 750, "even irreparable injury is insufficient unless it is 'both great and immediate'," *Ibid.,* 401 U.S. at 46, 91 S.Ct. at 751, and that "the cost, anxiety,

---

by the County to move ahead with prosecutions in disregard of that declaratory judgment could not be ignored. Not to allow injunctive relief in this case would place the District Court in the position of having granted declaratory relief, and then being unable to remedy the County's rejection of that judgment. This we cannot accept. Given the unique posture

of this case, the District Court on remand should consider the appropriateness of injunctive relief pursuant to 28 U.S.C. § 2202.

The Court will, of course, also determine whether the developments described above, *supra* nn. 12 and 13, have rendered the case moot.

and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable'." *Ibid.*

Thus, the district court was eminently correct in denying the requested injunction. That portion of its order should be affirmed. Because the declaratory judgment is now controlled by *Samuels*, holding that the practical effect of both injunctive and declaratory relief ordinarily is "virtually identical," and the propriety of declaratory and injunctive relief should be judged "by essentially the same standards," that portion of the district court's order should be vacated and the complaint dismissed.

Underlying the panel's decision is the faulty premise that a federal district court may somehow exercise supervisory or review functions over a state court system: "a decision by the County to move ahead with prosecutions in disregard of that declaratory judgment could not be ignored. Not to allow injunctive relief in this case would place the District Court in the position of having granted declaratory relief, and then being unable to remedy the County's rejection of that judgment. This we cannot accept. Given the unique posture of this case, the District Court on remand should consider the appropriateness of injunctive relief pursuant to 28 U.S.C. § 2202." (at 66, n. 14.)

The panel's opinion closes with an instruction to the district court to "fashion whatever remedies it deems appropriate, consistent with our holding that *Coleman* must be followed and unjustifiable delay cannot be tolerated." Indeed! Tolerated by whom? *A federal district court has no supervisory or review power over any state court.* The seminal case of Fay v. Noia, 372 U.S. 391, 430, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), merely gave federal district courts jurisdiction to inquire into "detention simpliciter." When a non-custodial sentence is imposed by the state, a federal district court lacks even habeas corpus jurisdiction. United States ex rel. Dessus v. Commonwealth of Pennsylvania, 452 F.2d 557, 559–560 (3d Cir. 1971). Similarily, a court of

appeals has no power to review a state criminal proceeding. We may inquire only whether there has been an unconstitutional imposition of custody by the state.

Even more questionable is the notion that under the guise of § 1983, a federal district court may enjoin the state of Pennsylvania from prosecuting in Allegheny County, and the state courts from holding preliminary hearings, unless the panel's concept of *Coleman* be respected. There is simply no authority and no precedent for this federal intrusion into state criminal processes.

Douglas v. City of Jeannette, *supra*, announced the general rule that a federal court should refuse to "interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent." 319 U.S. at 163, 63 S.Ct. at 881. Later, in Stefanelli v. Minard, 342 U.S. 117, 120, 72 S.Ct. 118, 96 L.Ed. 138 (1951), the Court observed that dictates of federalism demand that the federal judiciary respect state enforcement procedures except, as stated in *Douglas*, in "exceptional circumstances," because this area represents "perhaps the most sensitive source of friction between States and Nation, namely, the active intrusion of the federal courts in the administration of the criminal law for the prosecution of crimes solely within the power of the States." Severely limiting the concept of irreparable harm, the *Younger* Court reaffirmed this principle of comity as "a proper respect for state functions, a recognition of the fact that . . . the National Government will fare best if the States and their institutions are left to perform their separate functions in their separate ways." 401 U.S. at 44, 91 S.Ct. at 750.

Moreover, I am not convinced that this court lacks jurisdiction to right the wrong of an improperly issued declaratory judgment affecting the delicate area of federal state relations, simply because no appeal was taken. "No appeal was taken, however, and declaratory judg-

ment considerations are not before us." (at 66, n. 14). There are two answers to this. First, the panel stated in one paragraph that declaratory judgment considerations "are not before us," and then proceeded in the very next paragraph to address itself to the "appropriateness of injunctive relief pursuant to 28 U.S.C. § 2202." [1] Thus, the very injunctive relief proposed by the panel inexorably brings into appellate purview the declaratory judgment, the substantive underpinning of the relief suggested by the panel.

Secondly, I would notice the faulty declaratory judgment on appeal because the absence of true adversity between the parties to these proceedings raises a serious question of justiciability, and therefore jurisdiction. "It is a well settled principle that the question of subject-matter jurisdiction is always open. It cannot be conferred or supplied by consent of both parties or by estoppel, laches, or waiver of either party. Eldridge v. Richfield Oil Corporation [247 F.Supp. 407 (S.D.Cal.1965), aff'd, 364 F.2d 909 (9th Cir. 1966)]; Page v. Wright, 116 F.2d 449 (7th Cir. 1940); Brown v. Fennell, 155 F.Supp. 424 (E.D. Pa. 1957)." Knee v. Chemical Leaman Tank Lines, Inc., 293 F.Supp. 1094, 1095 (E.D.Pa. 1968). Similarly, in Moore v. Sylvania Electric Products, Inc., 454 F.2d 81, 84 (3d Cir. 1972), we noted that "[i]t is proper for this court to inquire into the jurisdictional prerequisites *sua sponte.*"

The lack of the true adversary nature in the proceedings in the district court fairly leaps from the panel's opinion. The agency charged with supplying public defenders concededly is Allegheny County, Pennsylvania yet it is not a party to the action. Nevertheless, the panel's opinion states, "we expect Allegheny County to fully comply with the District Court's declaratory judgment." (at 66, n. 14.) The defendants are six magistrates of the City of Pittsburgh and the County District Attorney. None of the defendants has authority or jurisdiction to implement the district court's declaratory judgment or the panel's invitation to consider use of mandating an injunction to compel performance. Putting aside the recognized immunity of state judges under actions brought under 42 U.S.C. § 1983, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966), and recognizing that the very function of the district attorney's office is prosecution, not defense, even if relief against the appropriate state government agency charged with the direction of the Public Defender program was not barred by Younger v. Harris, the lack of sufficient adversary parties made the entire proceedings defective under Article III standards. This defect goes to the heart of federal jurisdiction which may be raised by the court *sua sponte*.[2]

1. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

2. I would not put undue emphasis on Swarb v. Lennox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), to avoid righting a district court order now deemed erroneous because of later decisions of the Supreme Court. Indeed, that case dramatically illustrates the practical necessity for true adversity in an Article III case and controversy. There "[t]he plaintiffs purport[ed] to act on behalf of a class consisting of all Pennsylvania residents who . . . signed documents containing cognovit provisions leading,

or that could lead, to a confessed judgment in Philadelphia County. The defendants are the county's Prothonotary and Sheriff, the officials responsible, respectively, for the recording of confessed judgments and for executing upon them. . . . A group of finance companies were permitted to intervene." Swarb v. Lennox, 405 U.S. at 196–197, 92 S.Ct. at 770. Although the plaintiffs appealed from the restriction of their purported class, the defendants and intervening finance companies took no appeal. The interesting question presents itself: would a defendant having a direct financial interest in the outcome of the three-judge court's decision have taken an appeal? In the companion case, D. H. Overmyer Co. v. Frick Co., 405 U.S. 174,

These proceedings, like Swarb v. Lennox, *supra,* illustrate "the risk that comes from passing on abstract questions rather than limiting decisions to concrete cases in which a question is precisely framed by a clash of genuine adversary argument exploring every aspect of the issue." Wright, Law of Federal Courts, § 12, p 37, citing United States v. Fruehauf, 365 U.S. 146, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961); Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed. 2d 113 (1969).

Therefore, I respectfully dissent from the denial of the petition for rehearing en banc.

92 S.Ct. 775, 31 L.Ed.2d 124 (1972), involving true adverse parties to a cognovit note, the Court refused to accept the argument that a procedure under the cognovit clause was unconstitutional *per se.* In *Swarb* the Court observed: *"Overmyer* necessarily reveals some discomfiture on our part with respect to the present case. However that may be, the impact and effect of *Overmyer* upon the Pennsylvania system are not to be delineated in the one-sided appeal in this case and we make no attempt to do so." Swarb v. Lennox, *supra,* 405 U.S. at 201–202, 92 S.Ct. at 773.

I am not aware that the justiciability issue was raised in *Swarb,* as I am here, but the case strikes me as a classic example of the danger which inheres when there is an absence of true adversity between the plaintiff and defendant. *Swarb* has created a jurisprudential vacuum in Pennsylvania. In Recommendation No. 37, the Procedural Rules Committee of the Pennsylvania Supreme Court noted that the *Swarb* Court said that the problems raised by the three-judge court decision are "peculiarly appropriate grist for the legislative mill." The Committee also noted "the three-judge decree in *Swarb* remains in full force and effect, with its confusingly limited coverage and the troublesome problems it raises for the prothonotaries and sheriffs throughout the Commonwealth. . . ." The Legal Intelligencer, May 24, 1972.