**UNITED STATES of America**

v.

**Herbert WILKINS.**

**Crim. No. 75–436.**

United States District Court,
E. D. Pennsylvania.

Nov. 30, 1976.

Rudolph S. Pallastrone, Philadelphia, Pa., for petitioner.

Gary Tilles, Asst. U. S. Atty., Philadelphia, Pa., for respondent.

## OPINION

DITTER, District Judge.

Herbert Wilkins was convicted by a jury of kidnapping,[1] violating the Mann Act,[2] and conspiracy to commit these offenses. He has filed post-trial motions asserting there was improper denial of pre-trial discovery, prejudice from my asking questions of a government witness, prosecutorial misconduct, and error in the jury charge. For the reasons which follow, defendant's motions will be denied.

■ The evidence adduced at trial, viewed, as it must be, in a light most favorable to the prosecution, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, reh. denied, 315 U.S. 827, 62 S.Ct. 629, 86 L.Ed. 1222 (1942); *United States v. McClain,* 469 F.2d 68, 69 (3d Cir. 1972), established that in the early morning hours of June 15, 1975, the defendant, Herbert Wilkins, in the company of another man, Lilton Smith,[3] was driving his automobile along Route 13 near Middletown, Delaware. They observed a vehicle travelling in the same direction and being operated by a woman unknown to them, but now identified as Loretta Dugger. Wilkins maneuvered his car beside hers and Smith pointed

---

1. 18 U.S.C. § 1201, which provides in pertinent part:
 (a) Whoever knowingly transports in interstate or foreign commerce any person who has been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away and held for ransom or reward or otherwise, . . . shall be punished.

2. 18 U.S.C. § 2421, which provides in relevant part:
 Whoever knowingly transports in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, any woman or girl . . . with the intent and purpose to induce, entice or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice . . . shall be fined not more than $5000. or imprisoned not more than five years, or both.

3. Smith was convicted of the same three offenses in a separate trial which concluded September 24, 1975.

toward the rear wheel of Mrs. Dugger's vehicle. Thinking that she might have a flat tire, Mrs. Dugger drove to the shoulder of the road. Wilkins pulled up beside her. Although Mrs. Dugger attempted to discover the problem by looking out the side window, she was compelled to get out of her vehicle when Smith told her the trouble was on the other side. At this point, Wilkins had left the driver's seat and was standing behind his car. He told her that her tires were bad and that he and Smith would give her a ride anywhere she wanted to go. Mrs. Dugger refused, but before she could reenter her vehicle, Wilkins grabbed her and, with the assistance of Smith, threw her onto the back seat of his automobile. While Wilkins drove, Smith attempted to have sexual intercourse with Mrs. Dugger, but was stopped by Wilkins, who told him to leave her alone and that "[y]ou have plenty of time for that." (N.T. 337). After she was pushed into the front seat, Wilkins forced Mrs. Dugger to commit oral sodomy upon him while Smith held a pocketknife to her side. Shortly thereafter, they observed a sign which said Pennsylvania and Wilkins commented "We're in Philly now. This is my territory." (N.T. 339–40). They drove to a row of white houses, where Wilkins stopped his car, pulled Mrs. Dugger into the back seat, forcibly removed her garments and, while Smith held her arms, had sexual intercourse with her. Thereafter, Smith had intercourse with her against her will. Mrs. Dugger put her clothes back on and was placed in the front seat once more. Wilkins then drove to the truck port of the Philadelphia Food Distribution Center and attempted to sell Mrs. Dugger as a prostitute. This failed, as did a similar effort a short time later, when Mrs. Dugger cried out that she would not be sold to anyone. Mrs. Dugger was then forced to commit oral sodomy on both men again.

At approximately 9:00 A.M. on the same day, they arrived at the home of Edward Smith, Lilton Smith's cousin. Mrs. Dugger informed Edward Smith of what had happened and he told Wilkins and Smith they should release her. Thereafter, Wilkins and Smith drove Mrs. Dugger to a point near a center city bus terminal and she was allowed to leave the car. However, before they were able to drive away, she noted the license number of Wilkins' vehicle. Mrs. Dugger immediately spoke with a security guard at the terminal, who called the Philadelphia police. She subsequently told agents from the Federal Bureau of Investigation what had occurred and Wilkins was arrested the next day, June 16, 1975, in Philadelphia, at approximately 8:30 A.M.

### I. The Failure of Loretta Dugger to testify at the Probable Cause Hearing

Defendant's first contention is that the failure of the prosecutrix, Loretta Dugger, to appear at the preliminary hearing and be available for cross-examination was a denial of the defendant's Sixth and Fourteenth Amendment rights, and that such denial requires the granting of a new trial. Specifically, he argues that the preliminary hearing is a "critical stage" in the prosecution, *Conley v. Dauer,* 321 F.Supp. 723, 727 (W.D.Pa.1970), remanded, 463 F.2d 63 (3d Cir.), cert. denied, 409 U.S. 1049, 93 S.Ct. 521, 34 L.Ed.2d 501 (1972), thereby entitling the accused to effective assistance of counsel, and the denial of the right to call a material witness on the issue of probable cause infringes upon that right to effective assistance. *United States v. King,* 157 U.S. App.D.C. 179, 482 F.2d 768, 775 (1973); *Coleman v. Burnett,* 155 U.S.App.D.C. 302, 477 F.2d 1187, 1204–05 (1973). Defendant's argument fails for two reasons.

■ First, there is nothing in the language or the history of Federal Rule of Criminal Procedure No. 5.1 to suggest that the preliminary examination has any purpose other than to afford a person arrested upon complaint an opportunity to challenge the existence of probable cause for detaining him or requiring bail. The rule is not intended to give discovery before trial. See *Sciortino v. Zampano,* 385 F.2d 132, 133 (2d Cir. 1967), cert. denied, 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 872 (1968); *United States v. Barone,* 311 F.Supp. 496 (W.D.Pa.

1970); *United States v. Johnson,* 294 F.Supp. 190 (E.D.Pa.1968).

 Rule 5.1 provides, "The finding of probable cause may be based upon hearsay evidence in whole or in part." A preliminary examination is not required as a condition precedent to prosecution by information, *Rivera v. Government of Virgin Islands,* 375 F.2d 988, 990 (3d Cir. 1967). There is no constitutional right to a preliminary hearing and any alleged defects in it are cured by a subsequent indictment. *United States v. Farries,* 459 F.2d 1057, 1061–62 (3d Cir.), cert. denied, 409 U.S. 888, 93 S.Ct. 143, 34 L.Ed.2d 145 (1972); *United States v. Walker,* 491 F.2d 236, 238 (9th Cir.), cert. denied, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974). Of course, where a preliminary examination is held discovery may be a collateral or incidental benefit to the defendant. *United States v. Johnson,* 514 F.2d 92, 94 (5th Cir.), cert. denied, 423 U.S. 1020, 96 S.Ct. 459, 46 L.Ed.2d 393 (1975); *United States v. Anderson,* 481 F.2d 685, 691 (4th Cir. 1973), aff'd, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 21 (1974); *United States v. Brumley,* 466 F.2d 911, 915, 916 (10th Cir. 1972), cert. denied, 412 U.S. 929, 93 S.Ct. 2755, 37 L.Ed.2d 156 (1973).

 Since a defendant has no constitutional right to have a hearing at all, and since he may be held on the basis of hearsay evidence alone, it follows he has no right to have a particular witness appear for purposes of discovery.

 Second, even if I were to conclude that *King,* supra and *Burnett,* supra, give the defendant a right to pre-trial discovery, it would not follow that a new trial should be granted in this instance. Here, Mrs. Dugger testified at a state court preliminary proceeding. Counsel for Wilkins was provided with the notes of testimony from that hearing and used them in cross-examining Mrs. Dugger (N.T. 432–36). In addition, Jenks Act statements were made available. In brief, counsel had a great deal of material to assist in cross-examination, albeit that Mrs. Dugger had not testified at the preliminary hearing.

There is no merit in the defendant's contention that the failure to produce Mrs. Dugger for pre-trial questioning was error.

## II. The Court's Questioning of Edward Smith

Defendant's second assertion is that reversible error was committed when I asked Edward Smith nine questions regarding the visit of Wilkins, Lilton Smith and Mrs. Dugger to his home. (See N.T. 565–67). Counsel argues that my questioning did not serve the purpose of clarifying Mr. Smith's testimony, but was an attempt to single out this witness and place undue emphasis on what he had to say. There is no merit to this assertion.

First of all, in preliminary instructions given before trial started, I told the jury that I might ask questions but that no particular significance was to be given to my doing so or my not doing so. (N.T. 247).

 Moreover, it would be ridiculous to hold that everytime the court asks a witness a question, prejudice arises to one side or the other because the witness repeats some aspect of his testimony. Such a conclusion would limit the responsibility of the trial judge to that of a mere moderator and effectively deprive him of his right to see that there is no misunderstanding of a witness' testimony, for he would be unable to guard against such repetition. *Ray v. United States,* 367 F.2d 258, 261 (8th Cir. 1966), cert. denied, 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785 (1967). As Justice Frankfurter stated "[f]ederal judges are not referees at prize-fights but functionaries of justice." *Johnson v. United States,* 333 U.S. 46, 54, 68 S.Ct. 391, 395, 92 L.Ed. 468 (1948). A trial judge has the authority not only to comment on the evidence but also to call or recall and question witnesses when he believes that this will aid the jury in discharging its fact-finding function. He must not, however, conduct these examinations in such a way as to control the jury or sway its deliberations. *United States v. Liddy,* 166 U.S.App.D.C. 95, 509 F.2d 428, 438 (1974).

■ Without attempting to justify my actions, for I feel such a justification is unnecessary, my questioning of Edward Smith lasted no more than three minutes, in a trial that covered four full days. It was not meant to fortify the impression of Mr. Smith's testimony, but was rather directed at clarifying whether Edward Smith said anything to Wilkins and Lilton Smith about leaving his home and releasing Mrs. Dugger, an area which, although admittedly covered on direct examination, was not dealt with in great depth.

My questioning fell far short of the judicial excess which exists when a trial judge creates an appearance of partiality either by intervention on the side of one of the parties or by continued interruption of the other party. *Liddy,* supra, 509 F.2d at 438. This was but an isolated incident where I felt some clarification was necessary. To hold that such questioning was prejudicial and intentionally partial shows a misunderstanding of a trial judge's role. Even so, assuming arguendo that my conduct was error, it must be ranked as harmless rather than prejudicial.

### III. The Court's Denial of Defendant's Right to Comment on Lack of Evidence Regarding the Medical Examination

Defense counsel's third point is that I committed reversible error when I refused to let him argue to the jury that the prosecution's case was weakened because the results of medical tests on Loretta Dugger had not been offered in evidence. Specifically, he contends that when a victim of an alleged rape is examined at a hospital, a smear is taken to determine the presence of semen and that as a matter of routine, these smears are catalogued by type of sperm.

■ First of all, this was not a rape case. Although Loretta Dugger testified that she had been raped, defendant was charged with kidnapping, violating the Mann Act, and conspiracy. Establishing that Mrs. Dugger had been raped was not an essential element of the government's proof. Secondly, there was no evidence that such a test exists, and if so, that it is routinely performed. Most important of all, there was no evidence that such a test had been performed on Loretta Dugger. It is elementary that counsel should confine closing argument to matters of record, *United States v. Gibson,* 513 F.2d 978, 980 (6th Cir. 1975), and although he may comment that the absence of objective findings shows a flaw in the prosecution's case, some foundation must have been laid by testimony that such evidence was obtained or could have been obtained.[4] Here, the only testimony came from defense counsel. Of course, counsel may not give any testimony, much less medical testimony, and most of all, counsel may not testify as an expert during his final summation.

■ In the third place, while it is true that the failure of a party to produce a witness who is particularly within his control creates the inference that such testimony would be unfavorable, and while that failure may be the subject of comment by the other party, *United States v. Blakemore,* 489 F.2d 193, 195 (6th Cir. 1973), any inference from a party's failure to call a witness equally available to both parties is

---

4. At the very least, the matter would have to deal with an "adjudicative fact" of the type contemplated by Federal Rule of Evidence No. 201. Defense counsel did not follow the procedure set forth in Rule 201, and I was not then aware of the cataloguing to which he referred as the following colloquy shows:

The Court: Once again, Mr. Pallastrone, you are testifying.
Mr. Pallastrone: I'm not testifying, sir, I don't believe, sir.
The Court: Well, you are intimating to the jury that there is some test of male sperm and that you can tell a person's identity by the type of his sperm.
Mr. Pallastrone: No, I didn't—
The Court: There is no test like that made and I will state to you I have never heard of a test of that type.
Mr. Pallastrone: Never heard of a sperm test, sir? You can identify the type of—
The Court: Well, don't argue to me about that. You can argue to the jury the evidence of this case but not your scientific background. (N.T. 617–18)

impermissible. *Labit v. Santa Fe Marine, Inc.*, 526 F.2d 961, 963 (5th Cir.), cert. denied ── U.S. ──, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976). Expert witnesses who could have explained what tests were conducted on Mrs. Dugger were just as accessible to defendant as they were to the prosecution, the examination having been made at Philadelphia General Hospital, a public facility independent of the federal government. Since no adverse inference could arise in this case, defendant could not comment on the government's failure to call a witness, and he was properly excluded from doing so.

### IV. The Allegations of Prosecutorial Misconduct

Defendant's next two contentions of error stem from certain comments made by the Assistant United States Attorney during his closing argument. To be assessed, these contentions must be placed in their proper perspective.

While he was addressing the jury, defense counsel expressed *his* opinion concerning Mrs. Dugger's degree of sophistication,[5] *his* opinion as to what took place between Wilkins and Mrs. Dugger,[6] and, as previously noted, *his* opinion as to scientific and medical tests. In rebuttal the Assistant United States Attorney addressed himself to counsel's version of the events and said that the only place where such a story existed was in counsel's mind. This comment is assigned as prosecutorial misconduct on the theory that it suggested to the jury that defense counsel was guilty of fabrication.

**5.** N.T. 596.

**6.** N.T. 611, 612, 613 and 614. In addition, counsel "testified" as to road signs along the route Wilkins took back to Philadelphia (N.T. 604).

**7.** The Code of Professional Responsibility of the American Bar Association governs the conduct of lawyers in the courts of Pennsylvania and in this court. See Pa.R.C.P. 205, No. 11, Local Rules of Civil Procedure and No. 2, Local Rules of Criminal Procedure, United States District Court for the Eastern District of Pennsyl-

 Perhaps the comment of the Assistant United States Attorney was a bit direct, but it was accurate. There was nothing in the testimony to support counsel's argument. Although a lawyer may suggest, urge, advocate, assert, and contend in his closing speech, he should not give his personal beliefs or state as factual matters not in evidence.[7] If he does so, counsel should not take offense when in a single sentence his adversary points out what he has done. Moreover, it is not unfair for a prosecutor to remind the jury that the summation they have just heard was based on surmise instead of substance. Even a prosecutorial misstatement made in response to, and in rebuttal of, an improper inference suggested by defense counsel will not result in reversible error. *United States v. Somers*, 496 F.2d 723, 741 (3rd Cir.), cert. denied, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974).

The defendant's second assertion of prosecutorial misconduct is that the Assistant United States Attorney appealed to the passions and prejudice of the jury when he argued:

> Mrs. Dugger told you a little bit about her background. Mr. Pallastrone [defense counsel] went to great lengths in his questions to trump up certain aspects of her background in an attempt to discredit her, and we don't suggest to you that Mrs. Dugger should be the image by which you should set your lives or expect anybody else to set your lives. But nonetheless I suggest to you she is a totally believable person, a person who had the ill luck to be the one who happened to be driving down that road when Mr. Wilkins

vania. Paragraph EC 7–24 of the Code of Professional Responsibility provides: "In order to bring about just and informed decisions, evidentiary and procedural rules have been established by tribunals to permit the inclusion of relevant evidence and argument and the exclusion of all other considerations. The *expression by a lawyer of his personal opinion* as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or *as to the guilt or innocence of an accused* is not a proper subject for argument to the trier of fact. . . ." (emphasis added).

and the other man drove by and decided to enter into a course of conduct: kidnapping and sexual assault. It could just have easily been a person with any other type of background, . . . (N.T. 580).

That was the beginning of several hours of abject fear for Mrs. Dugger. And you should consider her testimony in light of the fact that from that moment on she was not a detached objective observer of what was going on but she was a frightened victim. Nonetheless, Mrs. Dugger was able to remember quite a few details. She related them to you. . . . (N.T. 581).

Mr. Pallastrone made much of the fact that she did not recall the street number. Well, I suggest to you that numbers are not always the easiest thing to remember. As you recall she said she was looking down and her eyes focused on that sign. Put yourself in the situation of a woman like that, that frightened (sic) situation, and ask yourself how would you react. Wouldn't you also be in a frightened state where your mind would tend to lock into one thing? . . . (N.T. 582).

█ Setting forth these portions of the argument at length, instead of prying a sentence or two out of context, demonstrates there was no misconduct by the Assistant United States Attorney. A prosecutor's argument must be viewed as a whole to see if it was unduly prejudicial. He is not restricted to a sterile recitation of the facts. *United States v. Greene,* 497 F.2d 1068, 1084–85 (7th Cir. 1974), cert. denied, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). He may be an advocate. *Homan v. United States,* 279 F.2d 767 (8th Cir.), cert. denied, 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960). His blows may be hard so long as they are not foul. *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1315 (1935).

█ Here, the cross-examination of the government's principal witness, Mrs. Dug-

ger, had been lengthy,[8] searching, and demeaning. As counsel himself observed,

. . . And I know that some of the members of this particular jury when I was cross-examining Mrs. Dugger, which I did very extensively, maybe didn't like what I was doing. Well, ladies and gentlemen, let me say this to you first, last and always: I'm not in a popularity contest with any member of this jury, with this Court. I'm charged with a very awesome responsibility. . . .

. . . I have to do those things which I think are necessary to protect the interests of my client. So if it means I have to get a little rough with someone because I believe that that's in the best interest of my client, because I believe that that which that person said is not the truth, well, I'm going to get rough. It's as simple and plain as that, and if somebody doesn't like my demeanor or my tactics, well, as I said, I'm not here looking for praise at the end of this case. . . . (N.T. 596–7).

Under the circumstances, it was entirely appropriate for the Assistant United States Attorney to argue that any inconsistencies or inaccuracies on her part were the results of the ordeal which she had described and not deliberate falsification.

█ The Court of Appeals has observed that trials are rarely, if ever, perfect, and that improprieties by counsel in their argument should not warrant a new trial unless they are so gross as probably to prejudice the defendant and the prejudice has not been neutralized by the trial judge before submission of the case to the jury. *United States v. Homer,* 545 F.2d 864, at page 867 (3d Cir., 1976). Any harm from prosecutorial argument must have affected a substantial right of the defendant. The prejudice must be balanced against the evidence of guilt. *United States v. Cook,* 505 F.2d 659, 664 (5th Cir. 1974), cert. denied, 421 U.S. 1000, 95 S.Ct. 2397, 44

---

**8.** Mrs. Dugger's direct examination comprised approximately 40 pages of the record; cross-examination approximately 151 pages.

L.Ed.2d 667 (1975). Here, there was no misconduct—much less any prejudice that affected a substantial right of the defendant.

## V. The Charge of the Jury

 The final assertion of error involves my charge to the jury, wherein, defendant alleges, I failed to review the cross-examination by defense counsel properly[9] and thereby gave undue emphasis to the prosecution's arguments. First of all, I had told the jurors that the weight to be afforded to the testimony was for them to decide (N.T. 247, 644, 647, 670, 684). Secondly, without meaning to be unkind, it would be fair to say that while defense counsel's cross-examination was probing, it was not productive. Finally, this claim is also fatally defective because of defense counsel's failure to object at the appropriate time.

Rule 30 of the Federal Rules of Criminal Procedure provides that a party may not assert error in the charge to the jury unless objection is made prior to the time the jury retires to begin its deliberations. In the instant matter, defendant's counsel, following the conclusion of my instructions, stated: "Judge, I have no complaint, no objection to the general charge. I think you have covered everything." (N.T. 685). In failing to bring these objections to the court's attention, defendant waived his right to allege any error, unless the charge contained, once again, a plain error or defect affecting a substantial right. *United States v. Chicarelli,* 445 F.2d 1111, 1115 (3d Cir. 1971); *United States v. Green,* 373 F.Supp. 149, 159 (E.D.Pa.), aff'd, 505 F.2d 731 (3d Cir. 1974), cert. denied, 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975). An examination of the record discloses nothing that would constitute plain error and for this reason defendant's challenge to the court's charge must be dismissed.

For the reasons stated, I conclude that the defendant is not entitled to either a judgment of acquittal or a new trial.

---

9. Defendant did not put on any evidence in his own behalf.