Gary GARRETT, Steve Garrett, Craig Dowland, Donna Dowland, Bruce Silverman, Wyatt Carey, Dave Somers, James Bishop, Rebecca Turner and Greg Parish, Plaintiffs,

v.

Col. Tommy L. GOODWIN, Director of the Arkansas State Police; et al., Defendants.

No. LR–C–82–385.

United States District Court, E.D. Arkansas, W.D.

May 23, 1984.

See also, 569 F.Supp. 106.

Steve Clark, Atty. Gen. by James W. Cullum, Asst. Atty. Gen., Little Rock, Ark., for defendants Goodwin, Moye, Jackson, Davidson, Rosegrant, Odom, Cooper, Tosh, Young, Beach and Holcomb.

Chris Parker, Little Rock, Ark., for defendants Ark. Highway and Transp. Dept., Johnson, Ray, Breeding, McClean and Briggs.

Graham Sudbury, Percy Wright, Blytheville, Ark., for defendants Dye and Medford.

Fletcher Long, Forrest City, Ark., for defendant Conlee.

John Wesley Hall, Jr., Larry D. Vaught, John M. Bilheimer, Jr., Little Rock, Ark., for plaintiffs.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Currently pending before the Court is the motion of plaintiffs and their counsel for award of attorneys' fees and costs in the amount of $116,591.58. This sum also includes a request of a 100% multiplier.

This action was filed on May 29, 1982, pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief that the Arkansas State Police policy of conducting "saturation enforcement" roadblocks on interstate highways is unconstitutional under the Fourteenth Amendment; and that the twenty-four hour roadblock of Interstate 40 in St. Francis County, Arkansas, on May 3rd and 4th, 1982, where there were approximately 7,500 vehicle stops involving approximately 12,000 motorists and passengers, and 100 police officers, was unreasonable and violated the Fourth Amendment.

The issues were settled between the parties and the following judgment was entered providing, in part:

Pursuant to the Stipulation of Fact and Issues and Consent Decree ..., the court declares that the May 3–4 "saturation enforcement" roadblock on Interstate 40 near Forrest City, Arkansas was unreasonable and violated the Fourth Amendment and the defendants and their agents, subordinates, successors in office, and those acting in concert with them are ordered to follow the terms of the Consent Decree for all roadblocks and vehicle stops in Arkansas.

Counsel for plaintiffs have submitted affidavits and schedules designating the number of compensable hours spent by counsel on the case and the billing rate that counsel normally charges and assert that such rate should be applied in awarding fees in this action.

The following is a schedule respecting each counsel's request:

JOHN WESLEY HALL, JR., ESQ.

Hall, who is lead counsel, claims 299.8 hours devoted to the merits of the case and 5.5 hours for time spent in preparing affidavits and conferring with associates regarding the fee issue, aggregating a total of 305.3 hours.

Hall is asking an hourly rate of $150.00. He claims, therefore, a base fee or "lodestar" of $45,795.00. Hall is also claiming $2,255.15 for out-of-pocket expenditures for items ranging from copying and postage services to legal research by paralegals. For example, there is a purported disbursement for stenographic services in the amount of $719.75, as a high, to a low of $7.50 for copying legal documents.

LARRY D. VAUGHT, ESQ.

Vaught claims 126.8 hours devoted to the case of which five hours were devoted to preparing his claim for attorney's fees. Vaught claims an hourly rate of $75.00, resulting in a base fee of $9,510.00.

JOHN M. BILHEIMER, ESQ.

Bilheimer states in his affidavit that he was initially retained to represent Hall and Vaught on their claims for attorneys' fees in early November, 1982, when Hall and Vaught believed that the case had been settled. Bilheimer's fee for this service was a flat fee of $1,500.00. However, following this arrangement, a dispute developed between the parties as to whether the case had in fact been settled. A hearing was conducted, by the Court, on plaintiffs' motion to enforce the settlement agreement, thus, necessitating the calling of Hall and Vaught as witnesses. Bilheimer was engaged to represent Hall, Vaught and the plaintiffs in the enforcement of the settlement agreement. There was no agreement between Hall, Vaught and Bilheimer regarding Bilheimer's fees for this service. The parties simply agreed that such service would be performed at "an hourly basis." Bilheimer's affidavit reflects that 22.1 hours were spent on the settlement issue and $16.34 in out-of-pocket expenses for copying and meals.

## I.

■ The claim for attorneys' fees is pursuant to the Civil Rights Attorney's Fees Awards Act (Awards Act). The Awards Act, 42 U.S.C. § 1988 (1976), provides in relevant part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

It is recognized that the central purpose of the Awards Act is to encourage the enforcement and vindication of the civil rights laws by private individuals.

While defendants concede that the consent decree entered in this action provides that plaintiffs' counsel are entitled to a reasonable fee to be determined by the Court, defendants argue that plaintiffs are not actually "prevailing parties" within the meaning of § 1988 and that plaintiffs are receiving a fee because of defendants' consent; and that plaintiff's fee requests are grossly excessive and should be "drastically reduced." The Court is persuaded and so finds that defendants do not seriously challenge the right of plaintiffs' counsel to an award of fees, but really contest the amount claimed.

Defendants' halfhearted assertion that plaintiffs are not "prevailing parties," because plaintiffs did not obtain injunctive or declaratory relief as prayed in their complaint is without merit.

It is beyond question that plaintiffs prevailed in this proceeding in a practical sense in that plaintiffs acquired and achieved the relief sought without the necessity of a full scale trial on the merits. For example, pursuant to the stipulation of fact and issues between the parties, the Court concluded the "saturation enforcement" roadblock, as it affected plaintiffs, constituted a seizure under the Fourth Amendment to the United States Constitution. In addition, the Arkansas State Police, pursuant to the stipulation and consent decree, agreed to adopt a policy governing the operation of future licensing and vehicle registration roadblocks. The policy shall, at a minimum, articulate and address the following so as not to contravene Fourth Amendment rights secured under the Federal Constitution:

A. Decision to conduct roadblock to be made at a management level;

B. Considerations governing location, duration, and magnitude of roadblocks;

C. Presence of non-traffic enforcement personnel at or near the scene of roadblocks;

D. Ordering motorists out of vehicles;

E. Plain view searches, use of drug dogs, probable cause search, consent to search and use of D.E.A. drug courier profile.

The Court hastens to state that the Court finds that the relief achieved by virtue of this action not only accrues to the benefit of plaintiffs, but equally as much to untold numbers of both intrastate and interstate

motorists traveling upon the highways in the State of Arkansas. To hold that plaintiffs have not obtained redress in this proceeding for a legal injury would elevate fiction above reality. Indeed, the scope and the dimension of the relief realized unequivocally justifies the award of a reasonable attorneys' fee. It is clear that the policy changes to be implemented by the Arkansas State Police governing roadblocks are due to this litigation.

## II.

■ The Court, having found that plaintiffs and their counsel have clearly demonstrated that the statutory threshold requirement that plaintiffs are "prevailing part(ies)", now proceeds to determine what fee is "reasonable"—a fee that will compensate the attorneys for the full market value of their time and effort.

## HOURS REASONABLY EXPENDED

### JOHN WESLEY HALL, JR.

Hall claims 299.8 hours for time spent on the merits of the case. (See Appendix A to this opinion for Hall's detailed statement).

The Court recognizes that Hall has demonstrated an expertise [1] in the area of Fourth Amendment litigation and that his expertise should be taken into consideration in fixing an hourly charge. However, this same level of expertise would indicate that Hall could do research, investigation, drafting of pleadings and trial preparation in an expedited manner compared to the average, or even above average, attorney. For instance, the Court is concerned about the amount of time spent in trial preparations for Forrest City in May and early June; in the drafting of the complaint over seven days; in responding to the motions to dismiss; in amending the complaint to substitute individuals for the entities; in drafting and working on the stipulations over nine days; in research, trial preparation and settlement work over a period of twelve days; especially in preparing the motion to enforce; and in preparing the second amended complaint. The Court is persuaded that a person with Hall's recognized ability would not require these excessive amounts of time to produce the high quality in work and results. Therefore, the Court has eliminated the duplication and has determined that the better and more reasonable and accurate reflection of the number of hours that should be allowed is 200.

### LARRY D. VAUGHT

Vaught claims 126.8 hours of which 121.8 were devoted to the merits of the case and five (5) hours allotted to preparing his claim for fees. The Court is concerned about the 3.6 hours claimed for preparing a response and motion to dismiss on July 31, 1982, in view of the fact that Hall claims time for preparation of essentially the same work; in claiming 2.5 hours for instructing a paralegal and organizing search data; in claiming fourteen (14) hours on November 11th and 12th, 1982, on research and negotiation; in claiming nine (9) hours for hearing on motion to enforce on November 23rd in light of the fact that Hall also claimed ten (10) hours for the same hearing. The Court, therefore, has eliminated the duplication and overlap and concludes that a more reasonable number of hours that should be allotted is 94.7.

### JOHN M. BILHEIMER, JR.

The flat fee arrangement of $1,500.00 for Bilheimer's services in representing Hall and Vaught on the attorneys' fee issue

---

**1.** Hall received the Juris Doctor's degree from the University of Arkansas School of Law, Fayetteville, Arkansas, in May, 1973. He became a Deputy Prosecuting Attorney for Pulaski County, Arkansas, in August, 1973, after passing the Arkansas Bar Examination.

Between 1974 and 1979 Hall had several articles and books published in the area of criminal law, criminal procedure and trial advocacy. On May 28, 1982, Lawyer's Cooperative Publishing Company published Hall's book entitled *Search and Seizure.*

Hall has been admitted to practice before the United States Supreme Court, United States Courts of Appeal for the Fifth, Eighth, and District of Columbia, and the United States District Court for the Eastern and Western Districts of Arkansas. Hall has participated in numerous federal and state cases involving Fourth Amendment issues.

appears to be reasonable. Also, the Court finds that 22.1 hours claimed by Bilheimer for time devoted in the hearing on enforcement of the settlement is reasonable.

## HOURLY RATE

In establishing the hourly rate to be applied in this case, the Court approaches the task with the view that Congress, in enacting the Awards Act, did not intend that an award should be unalterably linked to a standard that determines the allocation of alms; and, on the other hand, an attorney should not realize a "wind fall". Thus, in seeking to achieve a balance between these factors, the Court recognizes that a reasonable hourly rate should reflect the training, experience, skill and background of the attorney. The hourly rate that an attorney generally charges his fee-paying clients for similar legal services while not conclusive is a factor that should be taken into account. It must be remembered that reasonable fee awards provide the necessary enforcement incentive in civil rights cases.

The Court finds, after carefully reviewing the record and data supplied by Hall in support of his fee request, that the services rendered by Hall in this action are the type of services offered by him in his field of expertise—Fourth Amendment litigation.

The Court finds that Hall charges his regular fee-paying clients for federal criminal, or constitutional litigation, other than Fourth Amendment work between $80.00 and $100.00 per hour. The Court also finds that either immediately before Hall was retained by plaintiffs in this case or at the time of his engagement, Hall was charging his regular fee-paying clients $125.00 per hour for Fourth Amendment litigation. However, Hall asserts that he has been charging $150.00 per hour since early May, 1982, and believes that hourly rate should apply here. The Court is persuaded that the better and more reasonable hourly rate is $125.00 which Hall was charging his regular fee-paying clients at the time of his engagement or shortly before.

Accordingly, Hall is entitled to a base fee or "lodestar" of $25,000.00.

## RISK OF NONRECOVERY AND QUALITY

The question the Court must determine here is whether the base fee awarded to Hall should be adjusted to take into consideration the contingency nature of the undertaking and the quality of the work performed on behalf of plaintiffs.

The Court of Appeals for the Eighth Circuit made the following comment in *Jorstad v. IDS Realty Trust*, 643 F.2d 1305 (1981), in commenting on the standards discussed by the Third Circuit Court of Appeals in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3rd Cir.1976):

> [T]he moving party must bear a heavy burden in proving the entitlement to an increase for risk or quality:
>
> "Any increase or decrease in fees to adjust for the quality of work is designed to take account of an unusual degree of skill, be it unusually poor or unusually good." ... [T]he increase or decrease reflects exceptional services only; it may be considered in the nature of a bonus or penalty. The heavy burden of proving entitlement to such an adjustment is on the moving party.

To demonstrate the complexity of the case—both legally and factually; the novelty of the issues; and the likelihood of success at the outset of representation, Hall set forth the following in his affidavit for fees:

> 1. To my knowledge, this case perhaps was one of the most complex Fourth Amendment cases to be litigated. The case went far beyond the stops and searches and seizures of the ten plaintiffs. Because plaintiffs were stopped at a roadblock, they had standing to contend that the entire roadblock was or became unconstitutional in its execution. Consequently the issue of the legality of the roadblock as a whole had to be tried under the balancing of interests test of *Delaware v. Prouse*, 440 U.S. 648, 653–

55 [99 S.Ct. 1391, 1395–97, 59 L.Ed.2d 660] (1979).

2. To affiant's knowledge, no case had ever tried the balancing of interests theory at the trial level first. That is an issue usually reserved for appellate courts after an examination of the facts. In a case involving one police officer and one defendant being subjected to a search and seizure, the application of a balancing of interests test is straightforward. In this case, however, there were approximately 7,500 vehicle stops involving probably 12,000 motorists and passengers, and 100 police officers. Potentially, every police-citizen contact at this roadblock was litigatible before the court under the balancing of interests test.

3. In recognition of the complexity of the issues in this case Mr. Vaught and I consulted with Mr. Cullum and the Prosecutor Coordinator's Office many times in preparation for trial.[2]

4. It became apparent in the August, September, and October pretrial discussions that if this case were not properly managed it could involve in excess of 150 witnesses and take more than one month to try. Consequently, the parties tried to find a way to narrow the issues by agreement including methods of limiting proof on certain issues so representative facts could be developed without innundating the court with information about each actual stop and search at the roadblock.

5. To the parties' knowledge, only one other interstate highway driver's license check roadblock had ever been litigated. That was *United States v. Prichard,* 645 F.2d 854 (10th Cir.1981), *cert. den.* [454 U.S. 832] 102 S.Ct. 130 [70 L.Ed.2d 110] and it did not involve anywhere near the number of issues that this case did. Also, plaintiffs contended throughout this case that *Prichard* was decided wrongly, and they would try to prove it.

6. When we undertook this case, we expected that it would take at least a year to bring this case to conclusion and that each of us would spend about 1,000 hours on the case without any certainty of compensation or reimbursement of expenses.

The Court agrees with Hall's assessment of the complexity of the issues and the risk involved in his representation of the plaintiffs in this action and awards $12,500.00 in recognition of that risk for the time spent through settlement of the case.

Relative to the quality factor, the Court finds that Hall is an experienced and proficient attorney. His proficiency is clearly demonstrated in the pleadings, arguments before the Court and in his ability to negotiate a final settlement, even after initial settlement efforts appeared to have been terminated and reduced to a nullity.

The Court has already discussed the resulting changes in the policies and practices of the Arkansas State Police with reference to future roadblocks. This policy change will not only benefit plaintiffs, but untold numbers of motorists making use of the highways in Arkansas.

The results achieved can only be described and characterized as exceptional. Accordingly, in recognition of the quality of the work of Hall in this case, the Court awards $18,750.00 to Hall for the time devoted through settlement of this case.

## FEE APPLICATION AND EXPENSES

Hall claims 5.5 hours as time spent in preparing his fee schedule and $2,255.15 for expenses incurred in this litigation. The Court is convinced that Hall should recover $687.50 for time spent in preparing his fee application and $2,255.15 for expenses incurred in representing plaintiffs' interest through settlement in view of the fact that such allowance will not diminish

**2.** The factual and legal issues that the parties agreed that would have to be resolved during the course of a trial are: (1) ordering occupants from vehicles at the roadblock; (2) burden of justifying warrantless searches; (3) plain view searches; (4) justification and scopes of vehicle searches; (5) initiation of consent searches; and (6) the D.E.A. profile is not reasonably suspicious or probable cause.

any benefits accruing to plaintiffs. *Jorstad v. IDS Realty Trust*, 643 F.2d 1305 (8th Cir.1981).

## LARRY D. VAUGHT AND JOHN M. BILHEIMER, JR.

■ Vaught[3] is requesting an hourly rate of $75.00 which is the rate he charges his regular fee-paying clients. The Court finds this rate reasonable and awards Vaught a base fee of $7,102.50.

Vaught spent five hours preparing his fee application and the Court awards the sum of $375.00 for this item.

The Court is not persuaded that a multiplier should be awarded Vaught in this proceeding inasmuch as Vaught was simply associated in the case with Hall, who is lead counsel and is nationally recognized as an expert in Fourth Amendment litigation. While it is plain that Vaught participated in these proceedings through settlement, Vaught played a minor role in contrast to the role undertaken by Hall who assumed the risks and mapped the strategy and perceived the theory to be pursued in prosecuting plaintiffs' case.

■ Bilheimer[4] states that he charges his regular fee-paying clients an hourly rate ranging from $50.00 to $90.00, but has not charged less than $60.00 per hour since his involvement in this case. Bilheimer concedes that his hourly rates are substantially lower than other attorneys in the community with similar experience and background. Considering the experience of Mr. Bilheimer and the nature of the services performed, the Court is allowing Mr. Bilheimer $80.00 per hour and awards a base fee of $1,768.00. An award of $270.00 is allowed for time spent on his fee

application, the $500.00 flat fee that Hall and Bilheimer initially agreed to and $16.43 for out-of-pocket expense. Bilheimer does not seek an enhancement award.

## APPORTIONMENT OF FEES

■ The defendants in this case are Col. Tommy L. Goodwin, Director of the Arkansas State Police and various named defendants who are also administrative officials of the Arkansas State Police (State Police); Division of the Arkansas Highway and Transportation Department; Manual Holcomb, Director of the Arkansas State Crime Laboratory; Charles Dye, Chief of the Blytheville, Arkansas, Police Department; and Coolidge Conlee, St. Francis County, Arkansas, Sheriff.

Plaintiffs argue that the fees and cost awarded should be assessed against two groups, the State Police and the St. Francis County defendants, because the roadblock was initiated, organized, directed and largely conducted by the Arkansas State Police; and that the remaining law enforcement agencies that took part were acting essentially at the direction of the State Police. Moreover, plaintiffs have explicitly waived any fee claim against one defendant group, the two Blytheville defendants because of the minor role played by this group in the roadblock.

Defendant State Police argue that the written waiver of any fee claim against the Blytheville defendants and verbal promises that fees will not be sought against the Arkansas State Highway Police Division of the Arkansas Highway and Transportation Department should preclude plaintiffs from recovering against the two remaining groups of defendants, State Police and St. Francis County Sheriff's group.[5] At the

---

**3.** Vaught, who is currently licensed to practice before the Arkansas Supreme Court, United States District Courts for the Eastern and Western Districts of Arkansas and the United States Court of Appeals for the Eighth Circuit, was admitted to the practice of law in March, 1979. He served as Deputy Prosecuting Attorney for the Sixth Judicial District of Arkansas from 1979 to 1982. Approximately twenty-five to thirty per cent of his practice involves federal

court litigation in the area of civil rights and constitutional law.

**4.** Bilheimer is a graduate of Harvard Law School and is a former law clerk to Chief Judge G. Thomas Eisele. He has been involved in civil rights litigation since 1973.

**5.** The National Auto Theft Bureau was dismissed from plaintiffs' action. Plaintiffs have also stated that the Arkansas State Crime Labo-

very least, argues State Police, plaintiffs' recovery should be reduced proportionately and all claims involving pleadings and hearings regarding these agencies must be deleted from plaintiffs' claim.

The Court agrees with plaintiffs that the fee awards and costs should be apportioned between the State Police and the St. Francis County defendants in view of the fact the State Police was the moving force in the initiation and implementation of the roadblock. The roadblock was conducted in St. Francis County and the county received approximately $25,000.00 from bond forfeitures and fines. The remaining defendants were more or less acting at the direction of the State Police. It must be remembered that it was the official policy of the State Police that was challenged by plaintiffs in this proceeding and the State Police has agreed to conform its future policies and practices in accordance with the consent decree entered in this case.

The Court holds that St. Francis County defendants should be required to pay one-fourth of the recovery, namely $17,556.10, and the Arkansas State Police defendants three-fourths, namely, $52,668.33.

### SUMMARY

ATTORNEYS' FEES:

JOHN W. HALL:

| | | |
|---|---|---|
| A. | Base fee for time spent on the merits | $25,000.00 |
| B. | Increase for risk on the merits | $12,500.00 |
| C. | Increase for quality on the merits | $18,750.00 |
| D. | Base fee for time spent on fee application | $ 687.50 |
| E. | Expenses incurred on the merits | $ 2,255.15 |
| | Total Fees | $59,192.65 |

LARRY D. VAUGHT:

| | | |
|---|---|---|
| A. | Base fee for time spent on the merits | $ 7,102.50 |
| B. | Base fee for time spent on fee application | $ 375.00 |
| | Total Fees | $ 7,477.50 |

JOHN M. BILHEIMER, JR.:

| | | |
|---|---|---|
| A. | Base fee for time spent representing Hall and Vaught during hearing on settlement issue | $ 1,768.00 |
| B. | Fee application | $ 270.00 |
| C. | Expenses | $ 16.43 |
| D. | Flat fee agreed upon for representing Hall and Vaught on attorneys' fee issue | $ 1,500.00 |
| | Total Fees | $ 3,554.43 |

---

Plaintiffs' counsel are directed to prepare a precedent for a judgment to be entered in this action within five days from the date of this order and submit same to counsel for defendants, the Arkansas State Police and St. Francis County defendants for approval.

### APPENDIX TO HALL AFFIDAVIT

| Date | | Time |
|---|---|---|
| 5–12 | Phone conferences, research | 3.25 |
| 5–13 | Phone conferences, meetings, research | 4.1 |
| 5–14 | Phone conferences | .75 |
| 5–15 | Research | 1.0 |
| 5–16 | Phone conferences, research | 2.0 |
| 5–17 | Travel time to Forrest City, Court appearances (FCMC), witness and client interviews | 6.25 |
| 5–18 | Calls to/from ASP (Cullum) | .3 |

---

ratory's involvement in the roadblock is comparable to that of the Blytheville defendants and fees will not be sought against that agency.

APPENDIX TO HALL AFFIDAVIT

| Date | | Time |
|---|---|---|
| 5–19 | Meeting with Col. Goodwin and Cullum, calls to witnesses, ASP | 2.25 |
| | Drafting complaint | 3.5 |
| 5–20 | Calls re resettings of Forrest City trials at request of state | 1.0 |
| 5–21 | Drafting complaint | 2.0 |
| 5–22 | Drafting complaint | 2.3 |
| 5–23 | Drafting complaint | 2.75 |
| 5–24 | Drafting complaint | 8.6 |
| 5–25 | Drafting complaint | 3.25 |
| 5–26 | Drafting complaint | 2.4 |
| 5–27 | Filed complaint | .25 |
| 6–1 | Trial preparation—Forrest City Municipal Court | 2.0 |
| 6–2 | Trial preparation, trial—Forrest City Municipal Court, travel | 11.25 |
| 6–3 | Calls to clients and reviewing motions to dismiss | 2.3 |
| 6–28 | Preparing response to Motions to Dismiss and Discovery Responses | 2.5 |
| 6–29 | Preparing response to Motions to Dismiss and Discovery Responses | 3.25 |
| 6–30 | Preparing response to Motions to Dismiss and Discovery Responses | 2.6 |
| 7–22 | Preparing response to Motions to Dismiss and Discovery Responses | 1.1 |
| 7–22 | Phone conferences re extensions of time | .3 |
| 7–26 | Reviewing discovery responses | .5 |
| 7–28 | Phone conference and settlement discovery | .3 |
| 8–6 | Reviewing settlement offers | .4 |
| 8–8 | Drafting counterproposal settlement | 1.0 |
| 8–9 | Drafting counterproposal settlement | 4.75 |
| 8–10 | Settlement conf, reviewing discovery | 2.8 |
| 8–17 | Reviewing discovery | 1.5 |
| 8–18 | Research and amending complaint | 2.25 |
| 8–19 | Drafting amended complaint | 1.1 |
| 8–23 | Revising amended complaint | 1.5 |
| 9–1 | Call to Cullum re settlement, letter | .5 |
| 9–6 | Drafting Stipulation | 2.0 |
| 9–7 | Settlement conference | 4.5 |
| 9–8 | Drafting issues for stipulations | 2.6 |
| 9–9 | Drafting issues | 1.75 |
| 9–10 | Drafting stipulation | 2.0 |
| 9–11 | Drafting stipulation | 4.75 |
| 9–12 | Drafting stipulation | 3.6 |
| 9–13 | Drafting stipulation and decree, Cullum meeting | 3.2 |
| 9–14 | Worked on stipulation | 3.4 |
| 9–20 | Call to Cullum | .2 |
| 9–21 | Letters to TV stations re evidence | .3 |
| 9–27 | Call to Cullum | .5 |
| 9–28 | Lexis search | 1.7 |
| 9–29 | Drafting subpoenas, call to witnesses | .6 |
| 10–4 | Reviewing videotapes, meeting Cullum | .5 |
| 10–6 | Reviewing videotapes at KATV | 1.2 |
| 10–8 | Editing videotapes to make exhibit | 1.4 |
| 10–9 | Research and trial preparation | 4.1 |
| 10–10 | Trial preparation, settlement work, research | 2.5 |
| 10–11 | Trial preparation, settlement work | 1.6 |
| 10–12 | Trial preparation, settlement work | 2.75 |
| 10–13 | Work on settlement decree | 2.4 |
| 10–14 | Work on settlement decree, meeting with AG | 2.7 |

### APPENDIX TO HALL AFFIDAVIT

| Date | | Time |
|------|---|------|
| 10–15 | Work on settlement decree | 7.1 |
| 10–16 | Work on settlement decree | 9.25 |
| 10–17 | Work on settlement decree | 7.0 |
| 10–18 | Work on settlement decree | 6.1 |
| 10–19 | Work on settlement decree | 5.2 |
| 10–20 | Calls' | .2 |
| 10–21 | Work on settlement decree, research, proofreading | 4.2 |
| 10–22 | Distribute final draft | .25 |
| 10–25 | Calls to/from Cullum | .3 |
| 10–26 | Calls to/from Sudbury, Long, Cullum | .5 |
| 10–27 | Calls to/from Cullum | .5 |
| 10–28 | Calls to/from Dickerson, Cullum, Parker, meeting | .75 |
| 10–29 | Work on updating settlement proposal | 1.4 |
| 11–1 | Calls to/from Parker | .2 |
| 11–2 | Calls to/from Parker | .2 |
| 11–3 | Worked on response to ASHTD Motion for Summary Judgment, mailed changes | 1.0 |
| 11–4 | Research, response to Motion for Summary Judgment, hearing | 2.5 |
| 11–5 | Call to Sudbury, drafting 2.15–2.22 | 3.25 |
| 11–8 | Calls to Sudbury, Long, Cullum, meeting | 1.5 |
| 11–9 | Calls to Cullum, Court re settlement, research | 2.5 |
| | Law Clerk meeting, calls to Cullum | 1.4 |
| 11–10 | Hearing, conference with LV, research | 4.1 |
| | Call to Cullum, LV | 1.2 |
| 11–11 | Research re decree | 3.25 |
| 11–12 | Research settlement discussions | 10.1 |
| 11–13 | Research, drafting motion to enforce | 11.25 |
| 11–14 | Research, drafting motion to enforce, call to Cullum | 5.0 |
| 11–15 | Letter to court, drafting version B, research | 5.9 |
| 11–16 | Revised decree, met with Cullum | 5.5 |
| 11–17 | Motion to enforce | 11.3 |
| 11–18 | Motion to enforce | 6.25 |
| 11–22 | Preparation for hearing; meeting with Bilheimer | 4.3 |
| 11–23 | Preparation for hearing; hearing | 10.0 |
| 11–30 | Calls to Silverman, meeting with LV, affidavit | 2.2 |
| 12–1 | Work on 2d amended complaints (2 versions) | 1.25 |
| 12–3 | Work on 2d amended complaints (2 versions) | 4.5 |
| 12–4 | Work on 2d amended complaints (2 versions); Findings and Conclusions and new decree | 6.25 |
| 12–6 | Meeting with AG | 6.0 |
| 12–7 | Review of counteroffer; calls to clients | 1.0 |
| 12–8 | Call to Molock | .3 |
| 12–13 | Review of settlement proposal; meeting; calls to clients | 2.0 |
| 12–14 | Meeting with AG, calls to Sudbury; responding to AG press conference | 1.75 |
| 12–17 | Review of final documents, meetings to sign decree and findings, meetings with court and counsel | 3.0 |
| | Subtotal on merits | 299.8 hours |
| 12–20 | Meeting with Bilheimer re attys fees issues | 1.0 |
| 12–31 | Meeting with Bilheimer re attys fees issues | 1.0 |
| 1–3–83 | Preparation of affidavit, obtaining Weston and Forster affidavits | 3.5 |
| | Total time this case | 305.3 hours |
| | Times hourly rate of $150 equals | $45,795.00 |