Ozel CONLEY, Lewis Steward, Douglas Sizemore, Fred Green, Joseph Bolar, Earl Agurs, Marvin Kennedy, Charles DeMeo, Douglas Hays and Charles Zeitlman, on behalf of themselves and all others similarly situated, Plaintiffs,

and

Dean L. Craig, John Chawryluk,
Intervening Plaintiffs,

v.

Robert E. DAUER, John Chapas, Lewis Dadowski, Earl Harris and Anthony Troiano, individually and as City Magistrates for the City of Pittsburgh, and Robert W. Duggan, individually and as District Attorney of Allegheny County, Defendants.

Civ. A. No. 70–1130.

United States District Court,
W. D. Pennsylvania.

Oct. 30, 1970.

Neighborhood Legal Services, Pittsburgh, Pa., for plaintiffs.

Ralph Lynch, Jr., City Sol., Eugene B. Strassburger, Asst. City Sol., Pittsburgh, Pa., for all defendants, except Duggan.

Robert W. Duggan, Dist. Atty. of Allegheny County, Pa., H. David Rothman, Pittsburgh, Pa., amicus curiae.

## OPINION

GOURLEY, Senior District Judge:

In this civil action, the original and intervening plaintiffs are all indigent persons who have been charged with, but not yet indicted for, offenses in violation of the criminal laws of Pennsylvania. Defendants are Magistrates of the City of Pittsburgh, Pennsylvania, and the District Attorney of Allegheny County, Pennsylvania. H. David Rothman, Esquire, has intervened as amicus curiae on behalf of Allegheny County and the minor judiciary thereof.

Plaintiffs challenge the constitutionality of two practices of defendant-Magistrates in conducting preliminary hearings. Challenged in the first instance is the refusal of defendant-Magistrates to advise indigent defendants that they are entitled to the representation of counsel at their preliminary hearings and to appoint counsel for this purpose upon request. Secondly, plaintiffs challenge as unconstitutional the refusal of defendant-Magistrates to provide transcripts of preliminary hearings, without cost, to indigent defendants who have been represented by certain counsel at their preliminary hearings but will be represented by different counsel at their trials. The Court has jurisdiction by virtue of 28 U.S.C. § 1343, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202.

Plaintiffs seek to maintain this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. They contend, and the Court finds, that plaintiffs adequately represent what are, in effect, three classes of individuals charged with State criminal offenses. The first class is comprised of those indigent defendants who have had preliminary hearings without being afforded the representation of counsel and who have been bound over to court to await grand jury proceedings. The second class is comprised of those indigent defendants who have been afforded the representation of counsel at preliminary

hearings, have been bound over to court to await grand jury proceedings, will be represented at trial by counsel other than those which represented them at the preliminary hearings, and have been refused free transcripts of the preliminary hearings. The third class is comprised of all indigent defendants who await preliminary hearings scheduled in the future. Within each class are persons who are presently confined in jail in lieu of bond and others who have been released on bond.

Both declaratory and injunctive relief are sought. Plaintiffs seek a declaration that the aforementioned practices of defendant-Magistrates are unconstitutional. They also seek an injunction: (1) restraining defendant-District Attorney from presenting an indictment and/or scheduling and proceeding to trial in any case in which an indigent defendant has neither been represented by counsel at a preliminary hearing nor knowingly, understandingly, and intelligently waived a right to such representation; (2) restraining defendant-District Attorney from scheduling and proceeding to trial in any case where an indigent defendant will be represented at trial by counsel other than the one who represented him at his preliminary hearing and a request for a transcript of the preliminary proceedings, without cost, has been denied him, and (3) restraining defendant-Magistrates from conducting any preliminary hearings without advising indigent defendants of their rights to representation by appointed counsel at said hearings and without appointing or securing appointed counsel where requested.

A final hearing upon the relief requested by plaintiffs was held on October 19, 1970. Motions to dismiss presented by defendants at the outset of the hearing were taken under advisement. The material facts are not in dispute, the parties having entered into oral and written stipulations with regard thereto.

In Allegheny County, which includes the City of Pittsburgh, indigent defendants are represented at trial either by the Office of the Public Defender of Allegheny County or, in some instances, by private attorneys appointed by the Court of Common Pleas of Allegheny County and compensated from County funds. In capital cases, indigent defendants are provided with representation by the Public Defender or court-appointed private attorneys shortly after preliminary arraignment and thereafter. Thus, in capital cases, indigent defendants are represented by counsel at preliminary hearings. In other cases, indigent defendants are provided with representation by the Public Defender or court-appointed private attorneys only upon being bound over to Court, and, therefore, they are not represented at preliminary hearings by counsel.

Prior to August 15, 1970, defendant-Magistrates provided no means of recording the proceedings at preliminary hearings. Since that date, defendant-Magistrates have provided mechanical tape recordings of said proceedings. These tape recordings are made available for the use of counsel for the defendant and may be transcribed at the expense of the defendant. No public funds have been made available to pay the cost of a transcription desired by an indigent defendant.

In this action, defendants strongly urge the Court to abstain from rendering an adjudication and dismiss the Complaint. Whether the Court should abstain from rendering declaratory relief is a question apart from whether injunctive relief should be granted. Zwickler v. Koota, 389 U.S. 241, 254, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Abstention is a doctrine not to be lightly invoked. Discussing the broadened jurisdiction conferred upon the federal judiciary by various Congressional enactments, including the statutory provisions upon which jurisdiction is founded here, the Supreme Court stated in Zwickler v. Koota, *supra*, at 248, 88 S.Ct. at 395:

"In thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to

give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, ' * * * to guard, enforce, and protect every right granted or secured by the constitution of the United States * * *.' Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542. 'We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum.' Stapleton v. Mitchell, D.C., 60 F.Supp. 51, 55; see McNeese v. Board of Education, etc., 373 U.S. [668], at 674, [n. 6] 83 S.Ct. at 1437, n. 6, 10 L.Ed.2d 622. Cf. Cohens v. Commonwealth of Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257. The judge-made doctrine of abstention, first fashioned in 1941 in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, sanctions such escape only in narrowly limited 'special circumstances.' Propper v. Clark, 337 U.S. 472, 492, 69 S.Ct. 1333, 1344, 93 L.Ed. 1480."

Although it has been aptly stated by my distinguished colleague, the Honorable Edward Dumbauld, that "to wander in the domain of abstention is to find oneself in a 'darksome wood' or 'obscure forest.'"[1] attempts have been made to delineate those "special circumstances" in which abstention is appropriate. Abstention has been deemed proper:

1. To avoid the decision of a federal constitutional question where the case may be disposed of on questions of State law.

2. To avoid needless conflict with the administration by a State of its own affairs.

3. To leave to the States the resolution of unsettled questions of state law, and

4. To ease the congestion of the federal docket.

Wright, Federal Courts, 196 (2 Ed. 1970).

■ Defendants contends that, before deciding the constitutional questions presented here, the Court should afford the State courts an opportunity to resolve the questions under State law. Specifically, they point to Sections 6 and 7 of the Public Defender Act, Act of December 2, 1968, P.L. ——, No. 358, 16 P.S. §§ 9960.6, 7 (1970 Supp.). Section 6 provides in pertinent part:

"(a) The public defender shall be responsible for furnishing legal counsel, in the following types of cases, to any person who, for lack of sufficient funds, is unable to obtain legal counsel:

* * * * * *

(2) Where a person is charged with an indictable offense and has been held for grand jury action. In accordance with the provisions of the Pennsylvania Rules of Criminal Procedure, representation shall be provided at earlier stages of the prosecution in capital cases, and *may* be provided at earlier stages of the prosecution for a person charged with any other indictable offense; * * *." (Emphasis supplied.)

Section 7 provides:

"For cause, the court of common pleas *may*, on its own motion or upon the application of the public defender, the defendant, or person charged with being a juvenile delinquent, appoint an attorney other than the public defender to represent the person charged at any stage of the proceedings. The attorney so appointed shall be awarded reasonable compensation, and reimbursement for expenses necessarily incurred, to be fixed by the judge of the

1. Clark v. Ellenbogen et al., 319 F.Supp. 623, W.D.Pa., decided September 23, 1970.

court of common pleas sitting at the trial or hearing of the case and paid by the county." (Emphasis supplied.) The aforequoted provisions cannot be interpreted as mandating representation of indigent defendants by counsel at preliminary hearings. Clearly the language "may" as used in the two provisions is permissive, not mandatory, for the Legislature used the word "shall" in the Act where a mandate was intended. No matter of interpretation is presented, nor would the application of Sections 6 and 7 of the Act by the State courts obviate the necessity of deciding the constitutional questions presented here. There is no intertwining of the constitutional rights asserted here with questions of State law, and abstention on that ground is not warranted.

█ While abstention may well be appropriate to avoid needless conflict with the administration by a State of its own affairs, the Supreme Court has indicated in Zwickler v. Koota, *supra*, that the federal courts may not abdicate their responsibility to entertain requests for declaratory relief upon federal constitutional claims merely because injunctive relief upon such claims would be deemed improper. Declaratory relief here does not involve such an interference with the administration of State affairs as would warrant abstention.

█ I turn then to plaintiffs' contention that defendant-Magistrates are violating the constitutional rights of plaintiffs and others similarly situated by refusing to advise them that they are entitled to be represented by counsel at their preliminary hearings and by refusing to provide counsel for this purpose where the presence of counsel has not been knowingly and understandingly waived. I believe the recent decision of the Supreme Court in the case of Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1969) does require such a conclusion. In the *Coleman* case, decided on June 22, 1970, the Supreme Court declared the Alabama preliminary hearing to be a "critical stage"

in that State's criminal process, at which the provision of counsel is constitutionally required. The purposes of the Alabama preliminary hearing are to determine whether there is sufficient evidence against the accused to warrant presenting his case to the grand jury, and, if so, to fix bail if the offense is bailable. Defendants concede that the purposes of the Pennsylvania preliminary hearing are the same. The Pennsylvania preliminary hearing must, therefore, also be regarded as a "critical stage" in this State's criminal process, and the provision of counsel at the preliminary hearing is equally required here.

Defendants argue, nevertheless, that Coleman v. Alabama, *supra*, only requires counsel to be furnished in a situation where the accused ultimately will be able to demonstrate *actual* prejudice resulting from the failure to have counsel at his preliminary hearing. In so asserting, defendants rely on the fact that, in *Coleman*, the Supreme Court remanded the case to the Alabama Courts to determine whether the denial of counsel at petitioners' preliminary hearing resulted in prejudice to petitioners' trial, using the test of harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Defendants' interpretation of the *Coleman* decision is a strained one. The Supreme Court stated, 399 U.S. at p. 9 of the decision, 90 S.Ct. at p. 2003:

"The determination whether the hearing is a 'critical stage' requiring the provision of counsel depends, as noted, upon an analysis 'whether *potential* substantial prejudice to defendant's rights inheres in the * * * confrontation and the ability of counsel to help avoid that prejudice.' United States v. Wade, *supra*, 388 U.S. [218] at 227, 87 S.Ct. [1926] at 1932, [18 L.Ed.2d 1149]." (Emphasis supplied.)

It is the *potential* prejudice existing in any preliminary hearing confrontation and not the *actual* prejudice resulting in

any given case which led the Court to conclude that the preliminary hearing is a critical stage in the criminal process, requiring the presence of counsel.

■■ To assert that counsel is required only at a preliminary hearing where actual prejudice ultimately will result from counsel's absence is to confuse the constitutional right with the remedy for the violation thereof. The Supreme Court stated in the *Chapman* case, *supra*, 386 U.S. at 22, 87 S.Ct. at 827:

"We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."

The fact that the failure to afford counsel at a preliminary hearing may not, in the circumstances of a given case, be so prejudicial as to require vacation of the conviction does not render the presence of counsel at a preliminary hearing any less of a constitutional right or the failure to provide counsel at such a hearing any less of a violation of that right. I therefore conclude that the present practice of defendant-Magistrates in conducting preliminary hearings without providing counsel for indigent defendants is violative of their rights under the Sixth and Fourteenth Amendments to the Constitution.

Plaintiffs' second contention is that the Constitution requires the State to provide a free transcript of a preliminary hearing to an indigent defendant who has been represented by a particular counsel at the hearing but will be represented by different counsel at trial. An indigent defendant's constitutional right to a free transcript of his preliminary hearing for use at trial has been recognized in Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). In that case, the Supreme Court rules violative of the Equal Protection Clause of the Fourteenth Amendment a New

York statute which provided that a transcript of a preliminary hearing would be furnished to a defendant only upon payment of a fee and reversed the conviction of an indigent defendant who had requested but had been denied a free transcript of his preliminary hearing for use at trial. The Court stated at p. 42, 88 S.Ct. at p. 196:

"Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution. See, e. g. Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed. 2d 899 (1963); Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Only last term in Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966), we reiterated the statement first made in Smith v. Bennett, 365 U.S. 708, 709, 81 S.Ct. 895, 896, 6 L.Ed.2d 39 (1961), that 'to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws.' We have no doubt the New York statute struck down by the New York Court of Appeals in *Montgomery*, as applied to deny a free transcript to an indigent, could not meet the test of our prior decisions."

In Roberts v. LaVallee, *supra*, the Supreme Court apparently was confronted with a procedure in New York whereby reporters customarily recorded preliminary hearings but only provided written transcriptions of the records thereof upon payment by the defendant of a fee. The decision has been deemed applicable, however, to require also the recording of preliminary hearings where previously none had been made. In Gardner v. United States, 132 U.S.App. D.C. 331, 407 F.2d 1266 (1969), the United States Court of Appeals for the District of Columbia, while refusing on the basis of harmless error to set aside

the conviction, held that the failure of the District to record preliminary hearing proceedings and to provide indigent defendants with transcripts of such proceedings violated the defendants' rights. The Court of Appeals stated at p. 1268:

"The rampant confusion in the present case as to what happened in the Court of General Sessions, compounded by conflicting and blurred recollections, gives substance to our worst fears about the consequences of failing to record a preliminary hearing. In some cases denial of a written transcript may in fact be harmless error. But where, in contrast to the unusual circumstances of this case, there is any colorable claim of prejudice, it will be impossible for us to find the error harmless if there is no authoritative way for us to discover what actually transpired. Moreover, whereas an erroneous denial of written transcript is generally remediable, a prejudicial failure even to record the proceedings may often be incurable. *Therefore, especially in view of the constitutional status accorded an indigent's right to a transcript by Roberts v. LaVallee, supra, it now appears essential that every preliminary hearing be transcribed, whether by court reporter or by tape recording, regardless of whether any request for transcription is made.* In the exercise of our supervisory responsibility we so instruct the courts and the Commissioners of the District of Columbia. It is expected that appropriate procedures will be taken to assure that transcriptions once made are preserved." (Emphasis added.)

As interpreted, Roberts v. LaVallee, *supra,* requires both that the preliminary hearing proceedings be recorded and that a transcription, in one form or another, be made available on request to an indigent defendant for use at trial. While plaintiffs assert this right only on behalf of those indigent defendants who have been represented by one counsel at their preliminary hearings and will be represented by another counsel at trial, the right must be regarded as equally applicable to those indigent defendants who are represented by the same counsel throughout the proceedings.

The decision of the Supreme Court in Coleman v. Alabama, *supra,* merely serves to reinforce the importance of the right of an indigent defendant to a free transcript of his preliminary hearing upon request. In *Coleman,* the Supreme Court concluded that the presence of counsel at a preliminary hearing is essential for the following reasons, stated 399 U.S. at p. 9, 90 S.Ct. at p. 2003:

"First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail."

It is apparent from the aforequoted that counsel's presence was deemed essential to assure the fairness not only of the preliminary hearing but also of the trial itself. The second enumerated benefit of counsel's presence, to fashion a vital impeachment tool or to preserve the favorable testimony of one who does not appear at the trial, is a benefit which, as a practical matter, cannot be realized without there being available to counsel at trial a verbatim transcript of the preliminary hearing.

■ While Roberts v. LaVallee, *supra*, requires that preliminary hearing proceedings be recorded and that a free transcript of those proceedings be made available to an indigent defendant for use at trial, either the services of a court reporter or a reasonable alternative thereto may be used to record the proceedings. Draper v. Washington, 372 U.S. 487, 495, 83 S.Ct. 774, 9 L.Ed.2d 899 (1962), Griffin v. Illinois, 351 U.S. 12, 20, 76 S.Ct. 585, 100 L.Ed. 891 (1955), Gardner v. United States, *supra*, 407 F.2d at 1268. The provision and use of a tape recorder at preliminary hearings will satisfy the State's obligation provided that counsel may have effective use of the recording at trial. Because one of the primary uses of the recording is for purposes of impeachment, I conclude that a typewritten transcription must be provided, if not by secretarial services supplied by the State, at least at the expense of the State.

Turning to plaintiffs' request for injunctive relief, the Court finds that it is confronted with considerations substantially different from those which governed the determination to render declaratory relief. In Douglas v. Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1942), the Supreme Court stated that federal courts, sitting in equity, should refuse "to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear or imminent." This policy was reaffirmed in Dombrowski v. Pfister, 380 U.S. 479, 484, 85 S.Ct. 1116, 1119, 14 L.Ed.2d 22 (1965), where the Court, although carving out an exception where a chilling of First Amendment rights was threatened, stated:

" * * * (C)onsiderations of federalism have tempered the exercise of equitable power, for the Court has recognized that federal interference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework."

The relief requested is the enjoining of various stages of State criminal proceedings against plaintiffs and all others similarly situated. In effect, the Federal District Court is asked to bring to a halt a substantial number of criminal proceedings in the State Court. Plaintiffs have a heavy burden in establishing their right to such broad relief, and it has not been met here.

The decision of the Supreme Court in Coleman v. Alabama, *supra*, was rendered but four months ago. Shortly after the *Coleman* decision, members of the Court of Common Pleas of Allegheny County, the Commissioners of Allegheny County, the Public Defender of Allegheny County, the District Attorney of Allegheny County, the Solicitor of Allegheny County, the Solicitor of the City of Pittsburgh and members of the Neighborhood Legal Services Association met to consider the implications of the decision and the manner in which it could be implemented. Applications have been made to the Pennsylvania Crime Commission to secure funds for the representation of indigents at preliminary hearings.

However, it is evident that not only the City of Pittsburgh and the County of Allegheny but also the entire State of Pennsylvania will be required to make substantial changes in criminal procedures in order to accommodate the decision. Throughout the State, there is an extremely large number of members of the minor judiciary who have the power to preside over criminal proceedings. In Allegheny County alone, more than two-hundred and thirty-five members of the minor judiciary are empowered to preside over preliminary hearings. The impracticality, if not the impossibility, of having counsel appointed by a court of general jurisdiction to attend proceedings before the minor judiciary, in some instances many miles away, was recognized prior to the *Coleman* decision. See Rule 318 of the Pennsylvania Rules

of Criminal Procedure, Comment of the Criminal Procedural Rules Committee, 19 P.S. Appendix. Moreover, the financial burden which would result from requiring court-appointed counsel to travel to remote locations is formidable. For these reasons, State officials are presently considering the possibility of limiting the number of members of the minor judiciary empowered to conduct preliminary hearings.

It is clear that to accommodate the *Coleman* case, substantial procedural changes will have to be made, some by the State Legislature and others by the Supreme Court of Pennsylvania through its rule-making power. To accommodate the requirements of Roberts v. LaVallee, *supra,* similar changes will be required. The *Coleman* decision having been rendered only four months ago, it could not reasonably be expected that the necessary procedural changes would have been accomplished throughout the State within the time which has elapsed. In the circumstances, the granting of injunctive relief by this Court so as to halt State criminal proceedings until the State establishes a procedure fulfilling the requirements of the aforementioned decisions would be an unwarranted and singularly inappropriate interference with the State's administration of its own criminal procedures.

Moreover, the Court does not find that plaintiffs and others similarly situated will suffer irreparable injury by the denial of the injunctive relief requested. In Coleman v. Alabama, *supra,* the Supreme Court specified the remedy available to an indigent defendant deprived of his right to counsel at a preliminary hearing—he may challenge the validity of his conviction where the deprivation of his right to counsel at a preliminary hearing in fact was prejudicial. This same remedy is available to the indigent defendant denied a transcript of the preliminary hearing. Gardner v. United States, *supra,* 407 F.2d at p. 1267. With these remedies available in the course of plaintiffs' criminal proceedings, there is no necessity of injunctive relief here.

The Court is cognizant of those cases in which there have been found exceptional circumstances warranting equitable intereference with state criminal prosecutions. In Dombrowski v. Pfister, *supra,* the Supreme Court deemed appropriate the issuance of an injunction to restrain pending State criminal prosecutions which allegedly were brought in bad faith and the very existence of which tended to have a chilling effect on First Amendment rights of freedom of expression. There is no allegation here that any of the prosecutions against plaintiffs have been brought in bad faith. Nor are rights of freedom of expression involved.

The cases cited by plaintiffs, Phillips v. Cole, 298 F.Supp. 1049 (N.D.Miss.1968) and Bramlett v. Peterson, 307 F.Supp. 1311 (M.D.Fla.1969), also are distinguishable from the instant case. In Phillips v. Cole, *supra,* the Federal District Court enjoined State criminal proceedings against six indigent minor defendants where, seventeen months subsequent to the decision in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966), the State court still failed to appoint counsel to represent minor defendants at trial. Similarly, in Bramlett v. Peterson, *supra,* a federal district court enjoined the prosecutions of all indigent misdemeanants where, nearly two years after the federal district court had vacated the State convictions of eight indigent misdemeanants for want of representation of counsel at trial, the State minor judiciary continued to deny indigent misdemeanants this right. In each case, despite the lapse of a substantial length of time, the State courts gave no indication of an attempt to comply with constitutional mandates. Such is not the case here for a very short time has elapsed since the *Coleman* decision, and all evidence indicates that State authorities are making good faith efforts to accommodate to that decision. Moreover, in each of the aforementioned cases, the failure to provide counsel at trial warranted automatic reversal of the convictions. Consequently, injunc-

tive relief merely accomplished that, in every instance, would have been accomplished by appeal subsequent to trial. Such is not the case here. There may be expected to be many instances in which the deprivation of the right to counsel at a preliminary hearing will not result in such prejudice to the indigent defendant at trial as would warrant reversal of the conviction.

Also, the injunctive relief sought here would not be without detriments to plaintiffs and others similarly situated. Plaintiffs seek an injunction restraining various stages in the criminal prosecutions of indigent defendants, the preliminary hearings, the grand jury proceedings, and the trial itself, until such time as their rights to the representation of counsel at their preliminary hearings and to transcriptions of the hearings are afforded to them. The likely result of such an injunction would be the delay of their criminal proceedings. This delay would favor neither those who would languish in jail during the pendency of the proceedings nor those released on bond during that period.

It is concluded that there are not existent in the instant case such special circumstances as would warrant the injunctive relief requested.

This Opinion shall constitute the Court's findings of fact and conclusions of law, consistent with Rule 52(a) of the Federal Rules of Civil Procedure. An appropriate order is entered.

## ORDER

And now, this 30 day of October 1970, it is hereby ordered and decreed, consistent with the within Opinion, that the prayer for declaratory judgment is granted, and it is hereby declared:

1. That the practice of defendant-Magistrates in conducting preliminary hearings without advising plaintiffs and others similarly situated of their rights to representation by counsel at said hearings and without counsel being appointed to represent indigent defendants at said hearings where the right to counsel is not knowingly and understandably waived constitutes a violation of the rights accorded plaintiffs and others similarly situated under the Sixth and Fourteenth Amendments to the Constitution.

2. That the failure of defendant-Magistrates to provide plaintiffs and others similarly situated, upon request, with a free written transcription of tape recordings of their preliminary hearings, if not through utilization of the stenographic services of the State at least at the expense of the State, constitutes a violation of the rights accorded plaintiffs and others similarly situated by the Fourteenth Amendment to the Constitution.

It is further ordered that plaintiffs' request for a preliminary injunction be and the same is hereby denied.