Andre **CALHOUN, Bruce Brown, John B. Turner, William Johnson, Richard Guy, Carlos Thompson,** on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Thomas **FOERSTER, Cyril Wecht, Dr. William Hunt,** Commissioners of Allegheny County and **Robert Colville,** District Attorney of Allegheny County; and **Lester Nauhaus,** Director, Office of the Public Defender of Allegheny County; and **Joseph James, Gretchen Donaldson, Walter Little,** Pittsburgh City Court Magistrates, Defendants.

Civ. A. No. 70–1130.

United States District Court, W.D. Pennsylvania.

March 20, 1987.

Lester Nauhaus, Allegheny County Public Defender, pro se.

James J. Dodaro, Allegheny County Sol., Dennis R. Biondo, Asst. County Sol., Pittsburgh, Pa., Robert L. Eberhardt, Deputy Dist. Atty.

James B. Lieber, Thomas J. Henderson, Pittsburgh, Pa., for plaintiffs, Andre Calhoun, et al.

## CONSENT ORDER

ZIEGLER, District Judge.

AND NOW, this 20th day of March, 1987, the Plaintiffs and Defendant County Commissioners, District Attorney and Public Defender (hereinafter "County defendants") and their successors in the above-captioned action having reached agreement upon a proper manner in which indigent criminal defendants in the County of Allegheny and City of Pittsburgh are to be provided transcripts of preliminary hearings at no cost, in accordance with this Court's prior decision in *Conley v. Dauer,* 321 F.Supp. 723 (W.D.Pa.1970), *aff'd in part and remanded,* 463 F.2d 63 (3d Cir.), *cert. denied,* 409 U.S. 1049, 93 S.Ct. 521, 34 L.Ed.2d 501 (1972), it is hereby ORDERED that:

1. This action is hereby certified as a class action pursuant to Fed.R.Civ.P. 23(b)(2) for purposes of injunctive relief. The class is defined as: "all indigent criminal defendants who have or will have preliminary hearings before District Justices of Allegheny County and Magistrates of the City Court of the City of Pittsburgh."

2. All indigent criminal defendants represented at their preliminary hearings by the Allegheny County Public Defender shall, effective November 3, 1986, receive substantially verbatim transcripts of their preliminary hearings which shall be fully usable at trial for cross-examination and impeachment. Said transcript shall be promptly provided by the Public Defender to each defendant sufficiently in advance of trial to allow the defendant to participate in his or her own defense, and in no event later than the date of the pre-trial conference in Common Pleas Court.

3. The Public Defender, consistent with the practice of the private bar in Allegheny County, shall obtain and provide for a verbatim transcript of preliminary hearings by having the testimony stenographically recorded by a certified court reporter in all cases where the Public Defender, in his discretion, determines that due to the nature of the offense charged and the testimony expected to be presented, a stenographically recorded transcript is required. In implementing this provision the Public Defender has established guidelines for use by assistant Public Defenders in determining when a stenographically recorded transcript is required. Attached hereto as Appendix "A" are the presently effective guidelines established by the Public Defender for this purpose.

4. In other offenses, the Public Defender shall have the testimony recorded either by stenography or by an electronic recording device. Said device must be sufficiently accurate and reliable to be used in the acoustical conditions of the court rooms

where preliminary hearings are held in Allegheny County.

5. In order to prevent the testimony from being lost due to mechanical malfunction or otherwise, Plaintiffs and the County Defendants have proposed and shall comply with an order of President Judge Michael J. O'Malley of the Court of Common Pleas of Allegheny County, attached hereto as Appendix "B", directing that a District Justice or Magistrate who presides at a preliminary hearing shall simultaneously record or have recorded the testimony on a second accurate and reliable electronic tape recording machine. If the District Justice or Magistrate does not possess such a tape recorder, the Public Defender shall loan a tape recorder to the District Justice for the hearing together with a tape cassette. At the conclusion of the hearing, the District Justice or Magistrate shall return the loaned taped recorder as well as the tape cassette to the Public Defender.

6. Within twenty (20) days of the hearing, the Public Defender shall transcribe the testimony from the tape recorded by the Public Defender. If gaps or other failures appear on this tape, then the Public Defender shall determine if the missing material is correctly recorded on the second tape recorded by the District Justice or Magistrate. If so, the Public Defender shall use this tape or portions of it to reconstruct a full transcript of the hearing.

7. In the event that a portion of the testimony is missing from both tapes, then the Public Defender and District Attorney shall attempt to agree on and reconstruct, from notes or otherwise, the missing portion of testimony in a substantially verbatim fashion.

8. If the Public Defender and District Attorney are unable to agree to the missing portion of testimony, this shall not overturn the earlier decision of a District Justice or Magistrate to hold the case for court. Instead, within ten (10) days of the discovery that a material portion of testimony is missing from both tapes which cannot be reconstructed by agreement, the witnesses at the preliminary hearing shall promptly be deposed at a mutually conve-

nient time and place, limited only to the missing testimony.

9. After a substantially verbatim transcript has been prepared in a manner other than stenographic recording by a certified court reporter, as above, the Public Defender and District Attorney shall file with the trial court a stipulation of record indicating that the parties regard the transcript as being legally equivalent in all respects to a stenographic transcript prepared by a certified court reporter and usable at trial in the same manner, including cross-examination and impeachment.

10. The County Defendants, by agreement, shall pay damages in the amount of Two Hundred Fifty Dollars ($250) to each named party Plaintiff in full and complete satisfaction of Plaintiffs' claims for damages in this action.

11. The County Defendants, by agreement, shall pay the amount of Eight Thousand Five Hundred ($8,500.00) Dollars toward the attorney's fees of Plaintiffs' counsel.

12. This settlement represents a statement of the County Defendants' agreement to comply fully with the procedures established. This settlement does not represent any acknowledgment or confession of liability presently or in the past for any intentional or negligent acts bearing upon the creation or preservation of records of preliminary hearings. This settlement does not represent or acknowledge and, in fact, County Defendants continue to deny, that they have any power whatsoever to bind members of the minor judiciary or counsel, whether Public Defenders or otherwise as to their past, present, or future conduct bearing upon the administration of the courts of the minor judiciary, including the creation and preservation of records of proceedings in those courts.

13. This Court shall retain jurisdiction of this action to monitor this Consent Order for a period of at least one year. Beginning with the date of this Order, the Court shall receive quarterly reports from Plaintiffs' counsel and the Defendant Public Defender on the effectiveness of the new system of ensuring substantially verbatim pre-

liminary hearing transcripts usable at trial in all cases involving the Public Defender. If the parties are in compliance and the system achieves its goal for four consecutive quarters, then no further reports need be submitted. If the system is not successful or if there is evidence of noncompliance, then this Court shall schedule the matter for further proceedings to determine appropriate steps to ensure implementation of the remedy.

## APPENDIX A

### GUIDELINES FOR STENOGRAPHICALLY RECORDING PRELIMINARY HEARINGS

The Public Defender, in exercising his discretion, consistent with the practice of the private defense bar in Allegheny County, has established the following guidelines for determining when a stenographically recorded transcript of preliminary hearings is required.

In the following cases the assistant Public Defender at the preliminary hearing shall have the testimony recorded stenographically by a certified court reporter:

1. Homicide
2. Rape
3. Involuntary Deviate Sexual Intercourse
4. Aggravated Assault
5. Indecent Assault
6. Statutory Rape
7. Kidnapping
8. Robbery

## APPENDIX B

In re: Directing District Justices and Magistrates to Record Hearings of Indigents

C.A.D. 21 of Nov., 1986
Administrative Docket

In the Court of Common Pleas of Allegheny County, Pennsylvania Criminal Division

### ORDER

AND NOW, to wit, this 30th day of October, 1986, this Court taking note of *Commonwealth v. Dean* [348 Pa.Super. 1], 501 A.2d 269 (Pa.Super.1985) and *Conley v. Dauer*, 321 F.Supp. 723 (W.D.Pa. 1970), aff'd 463 F.2d 63 (3d Cir.1972) and *Calhoun v. Foerster* C.A. 70–1130 (W.D. Pa.) remanded at No. 85–3052 [780 F.2d 1014] (3d Cir.1985), and pursuant to Rule of Criminal Procedure No. 141(c)(4), it is hereby ordered that, effective November 3, 1986, all District Justices in Allegheny County and all magistrates of the City Court of the City of Pittsburgh will operate, or cause to be operated by staff of said District Justices or Magistrates, a tape recorder to record the proceedings of preliminary hearings in which the defendant(s) are indigent and/or represented by the Public Defender.

The equipment for recording said proceedings may be that of the District Justice or Magistrate, if available, or may be supplied by the Public Defender.

The cassette of the recording made by the District Justice or Magistrate shall be considered a backup record of the proceedings and shall be delivered immediately following the hearing to the Public Defender. The simultaneous recording of the proceedings made by the Public Defender shall be the primary record and also shall be retained by the Public Defender. The Public Defender also shall supply all cassettes necessary to accomplish the above.

The foregoing procedure is established in light of the court cases cited above and because in preliminary hearings of indigents in the past the only tape recordings of said hearings have been made by the Public Defender. On occasion, the tape recorders have malfunctioned, or for other reasons the tapes have been garbled, unintelligible or incomplete, leading to inadequate transcripts which can jeopardize subsequent court proceedings. The Court hopes to prevent these situations from developing by having the second tape recorder supplied by the Public Defender and operated by the District Justice or Magistrate or his or her staff.

In furtherance of that aim, it is suggested that the district justice or magistrate

give particular attention to maintaining order in the hearing room, (for example, making certain that only one person speaks at a time), thereby making more probable a satisfactory and intelligible recording.

BY THE COURT
/s/ Michael J. O'Malley

## APPENDIX C

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE MOTION FOR APPROVAL OF A CONSENT DECREE PURSUANT TO FED.R.CIV.P. 23(e)

As the Court is aware, this case has a long history. As *Conley v. Dauer*, 321 F.Supp. 723 (W.D.Pa.1970), it originally was handled in this Court seventeen years ago with the late Wallace Gourley presiding. Although the resolution of that case significantly led to providing indigents with counsel at preliminary hearings, it failed to correct problems stemming from deficient hearing transcripts.

Although *Conley v. Dauer* provided for the public defender to record the preliminary hearings and transcribe them, the difficulties were numerous. In some instances, human or machine error resulted in a tape recording with gaps or no recording at all. Additionally, errors occurred in transcription. Finally, due to the lack of reliability and/or certification, Common Pleas Court Judges in Allegheny County sometimes denied defendants the opportunity to use the transcripts for purposes of cross-examination, impeachment, or otherwise. This problem did not beset defendants who were not indigent and had been able to afford the services of court reporters at their preliminary hearings and certified transcripts.

The lack of opportunities for indigent defendants to cross-examine and impeach, and the inequality between defendants who could and could not afford court reported transcripts created questions of constitutional scope. As the United States Supreme Court determined in *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999 [26 L.Ed.2d 387] (1970), a preliminary hearing is a critical stage in the criminal justice process because substantial prejudice can follow from it and affect subsequent proceedings. However, if properly handled, a hearing can yield an accurate transcript that is "a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial" 399 U.S. at 9, 90 S.Ct. at 2003 (1970).

In addition, the Supreme Court previously had determined that a state's refusal to provide a free preliminary transcript to an indigent where others could pay according to a statutory rate was a denial of equal protection.

Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution. See, e.g. *Draper v. Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); *Griffin v. People of State of Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Only last Term, in *Long v. District Court of Iowa*, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966), we reiterated the statement first made in *Smith v. Bennett*, 365 U.S. 708, 709, 81 S.Ct. 895, 896, 6 L.Ed.2d 39 (1961), that "to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws."
[*Roberts v. Lavallee,*] 389 U.S. [40] at 42, 88 S.Ct. [194] at 196 [19 L.Ed.2d 41 (1967)].

In sum, important facets of due process, equal protection, confrontation and cross-examination are implicated in the case *sub judice*. Judge Gourley recognized the constellation of rights involved in *Conley v. Dauer*, 321 F.Supp. 7723 [723] (W.D.Pa. 1970). More recently, the Third Circuit Court of Appeals determined that the present named plaintiffs would be entitled to bring an action for damages for the putative denial of these rights *Calhoun v. Foerster*, C.A. No. 85–3052 [780 F.2d 1014

(3d Cir.1985) ]. Likewise, the Pennsylvania Superior Court per Judge Brosky held that as a matter of federal constitutional law "a stenographer and transcription or a substantially equivalent alternative must be provided at state expense to an indigent defendant for a preliminary hearing." *Com. v. Dean* [348 Pa.Super. 1], 501 A.2d 269 (Pa.Super.1985). Further, the Superior Court recognized that providing a stenographic transcript or its substantial equivalent was consistent with the Pennsylvania Rules of Criminal Procedure, and that "unequal access to such a transcript depending on a defendant's economic ability to buy it, is a violation of the [federal] Equal Protection Clause." 501 A.2d at 271. The Superior Court fully adopted the reasoning of the United States Supreme Court in *Roberts, supra* in reaching this determination. *Id.* at 270.

During the past year, the parties in the present case have met and conferred often with an eye to resolving this matter. Allegheny County Court of Common Pleas President Judge Michael J. O'Malley has given his support to these efforts which have resulted in the proposed Consent Order upon which the Plaintiffs and the County Defendants, including the Commissioners, Public Defender, and District Attorney, are in complete accord. Though the Pennsylvania State Supreme Court Administrator's Office and the City of Pittsburgh recognize no responsibility for damages or attorneys fees, they have agreed to the implementation of the substantive plan to ameliorate the hearing transcript problem for indigent defendants contained within the proposed Order.

For purposes of settlement, the parties have proposed certifying the matter as a class action with the class defined as "all indigent criminal defendants who have or will have preliminary hearings before District Justices of Allegheny County and Magistrates of the City Court of the City of Pittsburgh." Rule 23(b)(2) permits certification where the opposing parties have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to

the class as a whole." In short, the injury at issue must have flowed from policies and/or practices applicable to the entire class. *Santiago v. City of Philadelphia* 72 F.R.D. 619 (E.D.Pa.1976) modified on other grounds 435 F.Supp. 136 (E.D.Pa. 1977); *Alexander v. Aero Lodge 735*, 565 F.[2d] Id. 1364, 1372 (6th Cir.1977), cert. denied 436 U.S. 946 [98 S.Ct. 2849, 56 L.Ed.2d 787] (1978). There is no question of homogeneity in the instant case. Documents previously submitted to this Court and the Court of Appeals make plain that the previous practice of the County Public Defender could not guarantee a substantially verbatim preliminary hearing transcript that could be used for impeachment or cross-examination at trial. See e.g. the affidavit of the Public Defender of April 12, 1983 and affixed letter alerting indigent clients that their imprecise transcripts could contain gaps and deletions and "would not be admissible as such to impeach any witness."

The proposed Consent Order contains a remedy which Plaintiffs and Defendants believe will be adequate. Henceforth, all criminal defendants represented by the Public Defender must promply receive substantially verbatim preliminary hearing transcripts. At the preliminary hearing, the Defender must either provide a court reporter or tape record the proceedings using reliable recording equipment which is sufficient in the acoustical environment of the courts. Appendix A to the Consent Order contains a list of offenses in which the Public Defender "shall have the testimony recorded stenographically." These guidelines are directed to certain serious crimes against individuals where Commonwealth testimony typically is an important aspect of proof, including homicide, rape, involuntary deviate sexual intercourse, aggravated assault, indecent assault, statutory rape, kidnapping and robbery.

In other offenses where the Public Defender chooses to use the electronic recording method, various safeguards are employed to assure that an adequate transcript will result. First, the District Justice or Magistrate simultaneously will oper-

ate a back-up recorder to produce a second tape.

Within twenty days after the hearing, the Public Defender shall transcribe the tape recording. If gaps or other failures appear, then the minor judiciary's back-up tape shall be consulted to ascertain if it picked up the missing material. If so, this back-up tape or portions of it shall be used by the Public Defender to develop a full transcript of the hearing.

If a full transcript still cannot be made in this way, then the Public Defender and Prosecutor will attempt to reconstitute the missing portion in a substantially verbatim fashion by agreement. Failing this, the pertinent witness will be deposed on the missing portion of his earlier testimony.

Once a substantially verbatim transcript has been prepared from an electronic recording, the Public Defender and Prosecutor will file with the trial court a stipulation indicating that the transcript is legally equivalent in every respect to a court reported transcript. In this way, regardless of indigency, defendants should be adequately protected and should go to trial with transcripts available for cross-examination and impeachment. To insure that the new system will work, the consenting parties have asked this Court to monitor it for a year.

The Order also provides for the Defendants to pay damages without admission of liability in the amount of Two Hundred and Fifty Dollars to each named Plaintiff. Because the primary relief sought is injunctive, a request for incidental or ancillary money damages will not disqualify an action under Rule 23(b)(2). See *Elliot v. Weinberger,* 564 F.2d 1219 (9th Cir.1977), aff'd in part, rev'd on other grounds *sub nom, Califano v. Yamasaki* 442 U.S. 682 [99 S.Ct. 2545, 61 L.Ed.2d 176] (1979); *In re Sugar Industry Antitrust Litigation* 73 F.R.D. 322, 342 (E.D.Pa.1976).

Other aspects of the proposed settlement and its operation have been agreed upon. The named Plaintiff's Attorneys have proposed to limit their fees against the settling County Defendants to $8,500.00 which represents roughly a third of their time during this lengthy and complex litigation and is well within and below the hourly rates for civil rights work delineated by the Third Circuit Task Force on Attorney's Fees at 108 F.R.D. 237 (1985).

Also, the proposed method of notification involves posting the notice at City Court and in the magisterial courts, publishing it in the *Pittsburgh Legal Journal,* and making the Consent Decree available to all interested parties. This would seem to be the best practicable type of notification under circumstances wherein the entire class of plaintiffs must pass through the lower judicial system and be represented by lawyers at the preliminary stage. This method and the clear content of the notice would comport with Rule 23(c). Likewise, the time-line proposed by the parties for notification and objections is fair and reasonable, given that it is desirable to implement the new system as soon as is practicable to protect both the local criminal justice system's defendants as well as its convictions. Because the basic components of the proposed Consent Order were placed in operation on a *de facto* basis last year, it would seem unnecessary to enlarge the time for notification and objections.

Finally, inasmuch as the relief is prospective and injunctive, it would see that the nonparty members would be adequately protected and would benefit under the Consent Order.

For the foregoing reasons, it is submitted that the Consent Order including class certification should be approved by this Court pursuant to Rule 23(c).

Respectfully submitted,

/s/ James B. Lieber

James B. Lieber, Esquire
American Civil Liberties Union
237 Oakland Avenue
Pittsburgh, Pa. 15213–4004

/s/ Thomas J. Henderson

Thomas J. Henderson, Esquire
10th fl. Law & Finance Bldg.
Pittsburgh, Pa. 15219