Andre CALHOUN, Bruce Brown, John B. Turner, William Johnson, Richard Guy, Carlos Thompson, on behalf of themselves and others similarly situated, Plaintiffs,

v.

Thomas FORESTER, Cyril Wecht, Dr. William Hunt, Commissioners of Allegheny County; and Robert Colville, District Attorney of Allegheny County; and Lester Nauhaus, Director, Office of the Public Defender of Allegheny County; and Joseph James, Gretchen Donaldson, Walter Little, Pittsburgh City Court Magistrates, Defendants.

Civ. A. No. 70–1130.

United States District Court, W.D. Pennsylvania.

Dec. 16, 1987.

James B. Lieber and Thomas J. Henderson, Pittsburgh, Pa., for plaintiffs.

Lester Nauhaus, pro se.

Kenneth J. Benson, Dante Pellegrini, Dennis R. Biondo, Pittsburgh, Pa., and Howland W. Abramson, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

ZIEGLER, District Judge.

Plaintiffs have moved for an interim award of attorneys' fees and costs pursu-

ant to 42 U.S.C. § 1988. Plaintiffs assert that they are the prevailing parties in a civil rights action and that the litigation was a material factor in obtaining the relief that they sought. Plaintiffs seek $36,600 in attorneys' fees from the City of Pittsburgh Magistrates (City Magistrates). Plaintiffs originally sought $45,100 but the Allegheny County defendants agreed to pay $8,500 in attorneys' fees. Plaintiffs seek the remainder of the fees from the City of Pittsburgh (City) and the State of Pennsylvania (State) arguing that the City Magistrates represent both the City and the State. The City argues that the City Magistrates do not represent the City of Pittsburgh because it has no control over the policies or procedures followed by the City Magistrates. The State of Pennsylvania argues that plaintiffs were not the prevailing parties, and, assuming they were, the County of Allegheny should be primarily responsible for the fees.

This action began with a *pro se* motion to re-open *Conley v. Dauer*, 321 F.Supp. 723 (W.D.Pa.1970), *aff'd in part and remanded*, 463 F.2d 63 (3d Cir.), *cert. denied*, 409 U.S. 1049, 93 S.Ct. 521, 34 L.Ed.2d 501 (1972). In *Conley*, the district court concluded that the failure of defendant magistrates to provide a free written transcript of preliminary hearings to indigent criminal defendants violated the Fourteenth Amendment. *Id.* at 732. The court reasoned that a typewritten transcript was important for impeachment purposes and, as such, must be provided. The Court of Appeals affirmed the district court, but remanded to determine whether the problem was being corrected. On remand, the district court, assured by the public defender that proper steps were being taken, dismissed the case without prejudice.

In 1982, the present plaintiffs filed a motion to re-open *Conley* alleging that defendants were denying plaintiffs' access to substantially verbatim transcripts of their preliminary hearings without cost in violation of the Constitution and the decision in *Conley*. Plaintiffs noted that, although the public defender had attempted to comply with *Conley*, breakdowns occurred resulting in a lack of transcripts of preliminary hearings for many indigent criminal defendants. Further, the city magistrates refused to supply the back-up equipment or accept responsibility for recording the hearings. Plaintiffs sought compensation and injunctive relief for the alleged violation of their civil rights.

Defendants responded by asserting that plaintiffs lacked standing to re-open *Conley*. We agreed and dismissed the case. Plaintiffs, with new counsel, moved for reconsideration. We examined our decision and concluded that in light of the important issues presented by plaintiffs we would dismiss the case without prejudice. Plaintiffs appealed and the Court of Appeals remanded holding that the petition to re-open should be considered as notice of a separate suit asserting a claim for damages. At this point, defendants agreed to a settlement and plaintiffs refrained from filing an amended complaint to minimize counsel fees and expenses.

Counsel for plaintiffs and all defendants were involved in the settlement negotiations. As a first step, the parties urged Judge Michael J. O'Malley, President Judge of the Court of Common Pleas of Allegheny County, Pennsylvania, to enter an order directing that all district justices in Allegheny County and magistrates of the City Court of Pittsburgh "operate or cause to be operated ... a tape recorder to record the proceedings of preliminary hearings in which the defendant(s) are indigent and/or represented by the Public Defender." *In re: Directing District Justices and Magistrates to Record Hearings of Indigents*, C.A.D. 21 of Nov. 1986 (Common Pleas, Criminal Division). The judge expressly found that the procedure was established in light of this suit, *Conley* and a Pennsylvania Supreme Court decision. After Judge O'Malley's order, plaintiffs entered into a consent decree with the county defendants establishing the Public Defender's duty to assure that an indigent criminal defendant would receive a substantially verbatim transcript of a preliminary hearing. Plaintiffs assert that the procedures outlined in both orders provide the relief

that they sought. Plaintiffs now petition for attorneys' fees.

■ Congress has provided that a district court may, in its discretion, award reasonable attorney's fees to the prevailing party in a civil rights action. A plaintiff in a civil rights action is entitled to attorney's fees if (1) the plaintiff is a prevailing party and (2) a causal connection exists between the litigation and the relief obtained from the defendants. *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 910 (3d Cir.1985).

■ At the outset we must determine whether plaintiffs are the prevailing parties. In this jurisdiction, a plaintiff is a prevailing party if he "achieved 'some of the benefit sought by ... bringing the suit.'" *Id.; NAACP v. Wilmington Medical Center, Inc.*, 689 F.2d 1161, 1167 (3d Cir.1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983). In examining a plaintiff's prevailing party status, a court must identify the relief sought and the relief actually obtained. *Institutionalized Juveniles*, 758 F.2d at 911; *see also Abraham v. Pekarski*, 728 F.2d 167, 175 (3d Cir.), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984); *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir.1979). Failure to obtain the specific relief sought will not defeat prevailing party status so long as the relief obtained is the same general type. *Institutionalized Juveniles*, 758 F.2d at 912.

■ Here, plaintiffs sought to protect their rights by requiring that defendants provide substantially verbatim transcripts of their preliminary hearings without cost. The relief established procedures which, so far, have successfully provided plaintiffs with verbatim transcripts of preliminary hearings. *See* Letter from James B. Kieber, Esq. to the Honorable Donald Ziegler (Nov. 4, 1987). The relief sought and the relief obtained are the same; as such, plaintiffs are the prevailing parties.

Next, we must decide whether this litigation caused plaintiffs to prevail. In determining causation, "a court must decide whether the litigation constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief." *Institutionalized Juveniles*, 758 F.2d at 916; *Sullivan v. Commonwealth of Pennsylvania Dept. of Labor and Industry*, 663 F.2d 443, 452 (3d Cir.1981), *cert. denied*, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982). In deciding this issue, we must apply an expansive definition of causation. *Institutionalized Juveniles*, 758 F.2d at 916; *NAACP*, 689 F.2d at 1169.

■ The instant litigation led to the settlement agreement between plaintiffs and the county defendants, and the court order of Judge O'Malley regarding the conduct of the City Magistrates. In the settlement agreement, the county defendants recognized the impact of this litigation when they agreed to pay $8500 in attorneys' fees to plaintiffs. Judge O'Malley also recognized the impact. In his order, the state court judge specifically referred to this litigation as one of the reasons for his order. Based on these facts, we conclude that this litigation was a material factor in contributing to plaintiffs' receipt of the relief that they sought.

Now that we have concluded plaintiffs have established generally that they are entitled to attorneys' fees, several questions remain: first, the amount of such fees; second, who should pay; and third, in what proportion?

Congress requires that an award of attorney's fees be reasonable. A district court has discretion in making this equitable judgment. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Black Grievance Comm. v. Philadelphia Elec. Co.*, 802 F.2d 648 (3d Cir. 1986). However, the United States Supreme Court has established guidelines. A district court first should multiply the number of hours reasonably expended by a reasonable hourly rate. The product is the lodestar. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. As part of this calculation, the court must determine the reasonableness of the hours expended and the hourly rate.

Plaintiffs request $36,600 based on 360.8 hours for services rendered at an hourly rate of $125, less $8500 which the county defendants have paid. Counsels' affidavits extensively document the hours devoted to this litigation. The affidavits, as well as our familiarity with the case, establish that the time devoted to this litigation is reasonable, due to the unique procedural entanglement created by plaintiffs' *pro se* motion. We also note that this case was appealed to the Court of Appeals and plaintiffs obtained a favorable decision. Further, obtaining the broad relief sought from the various parties required many hours of negotiation. Based on these facts, we find that the amount of hours claimed and the manner in which that time was spent are reasonable for this litigation.

■■■ We also find that counsel's hourly rate of $125 is reasonable. Generally, the reasonable rate of an attorney's time is the price that time normally commands in the marketplace, which is usually reflected in the attorney's billing rate. *Black Grievance*, 802 F.2d at 652. Class counsel aver in their affidavits that $125 per hour represents the prevailing market rate and the rate at which they normally bill for this type of litigation. We also find that counsels' ability, experience in civil rights litigation and sophistication justify the hourly rate requested. Indeed, we find that the request is modest for these able litigators. The lodestar for this litigation is $45,100 or 360.8 hours multiplied by 125 per hour, which we find to be fair and reasonable.

■■■ Once the lodestar is calculated, the court may adjust the fee upward or downward based on any unique factors of the case. *Black Grievance*, 802 F.2d at 651. Generally, where a lawsuit involves one claim,

> the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on this litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

*Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

The relief obtained in this case when compared to the relief sought mandates that no downward adjustment be made. The hours expended were devoted solely to obtaining the relief that plaintiffs sought, namely, substantially verbatim transcripts of preliminary hearings for indigent criminal defendants without charge. The class also obtained the precise relief that they sought, that is, the agreed procedures for providing plaintiffs with the transcripts that they desired. As such, we find that plaintiffs' counsel should recover a fully compensatory fee of $36,600 ($45,100 less the $8500 paid by the county defendants).

Next, we must determine who will pay the $36,600 fee. Plaintiffs assert that both the City and the State are liable for the fees. The City denies any responsibility arguing that the City Magistrates, in their official capacity, do not represent the City of Pittsburgh. The State, without argument, contends that the Public Defender of Allegheny County is solely liable for the injuries alleged by plaintiffs, that no claims were made against the City Magistrates, and that the City Magistrates are prejudiced by plaintiffs' failure to request attorneys' fees in their petition to re-open *Conley*.

■■■ "[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond." *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). A civil rights plaintiff who prevails against a public servant in his official capacity also may be awarded attorney's fees against the public entity that the public servant represents. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Generally, if a complaint does not specify whether the officials are sued personally, in their official capacity, or both, the course of proceedings will indicate the nature of the liability sought to be imposed.

*Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. at 3106, n. 14. Thus, under these standards, we must determine whether the City and State received notice and an opportunity to respond.

Although plaintiffs did not specifically make a claim against the City Magistrates in their official capacity, the course of proceedings established that plaintiffs were making such a claim. The record also indicates that both the City and State received notice and an opportunity to respond. Counsel for the City was present at most, if not all, of the meetings, conferences and proceedings between the parties. Counsel for the State represented the City Magistrates in this litigation. We hold that all defendants had notice and an opportunity to respond. We now turn to whether the City Magistrates represent the City, the State, or both.

■ The City of Pittsburgh claims that the City Magistrates represent the State because the City Magistrates are controlled by the State Judiciary. Plaintiffs rejoin that the magistrates are appointed by the Mayor of Pittsburgh with approval of City Counsel, 42 Pa.C.S.A. § 3131(d), and that the City provides funding, personnel, supervision and legal counsel for the magistrates. We find that plaintiffs' argument is more convincing. Although the City Magistrates are controlled by the State Judiciary, they have a sufficient nexus to the City to warrant a conclusion that the City Magistrates in their official capacity represent the City. We will assess the City with a portion of plaintiffs' attorneys' fees.

■ We also find that plaintiffs' arguments regarding the liability of the State are persuasive. The court procedures of the City Magistrates are subject to the control of the Supreme Court of Pennsylvania or the agency to which that court delegates such power. *See* 42 Pa.C.S.A. § 1701 *et seq.* Section 1722 provides:

The governing authority [the Supreme Court] shall have the power to provide and modify general rules governing:

(1) Practice, procedure and the conduct of all courts, district justices ... if such rules are consistent with the Constitution of Pennsylvania ...

42 Pa.C.S.A. § 1722(a)(1). Thus, the Supreme Court of Pennsylvania exercises control over the City Magistrates. As such, the City Magistrates in their official capacity represent the Commonwealth of Pennsylvania and carry out the policies prescribed by the state's highest court.

■ Having determined that the City and State are responsible for plaintiffs' attorneys' fees, we must now equitably apportion the fees. As with determining the amount of a fee award, a district court has discretion in determining the apportionment of that award. *Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105, 1117 (9th Cir.1979). "Congress' broad grant of discretion to the district court allows it to take into account equitable considerations." *Durett v. Cohen,* 790 F.2d 360, 363 (3d Cir.1986).

Several courts have apportioned fees according to relative legal culpability. *See Jose P. v. Ambach,* 669 F.2d 865 (2d Cir. 1982); *Dean v. Gladney,* 621 F.2d 1331 (5th Cir.1980), *cert. denied,* 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981); *Seymour, supra; Mendoza v. Blum,* 602 F.Supp. 200 (S.D.N.Y.1985); *Garrett v. Goodwin,* 588 F.Supp. 825 (E.D.Ark.1984). Various courts have employed other factors in apportioning fees, including the time spent in litigating against each defendant, *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945 (1st Cir.1984); *Akron C. for Reproductive H. v. City of Akron,* 604 F.Supp. 1275 (N.D.Ohio 1985); the ability of the court to equitably apportion fees, *Cole v. Williams,* 624 F.Supp. 712 (W.D. Ark.1985), *aff'd,* 798 F.2d 280 (8th Cir. 1986); and the amount of time each public entity spent in defending the public official, *Morrison v. Ayoob,* 627 F.2d 669 (3d Cir.), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981). In sum, the decision to apportion a fee award depends upon the facts.

■ Here, the facts establish that the State is the most culpable party. The State Judiciary has direct control over the City Magistrates. It decides the policies and

procedures that are followed by the City Magistrates. The City, on the other hand, has no control over the procedures. The City's only connection to the City Magistrates is the appointment power of the Mayor and some funding by the City. The State's culpability is highlighted because it would have been the party liable for money damages in this case, not the City. Generally, a state or municipality can be held liable only when the execution of its policy or custom causes plaintiffs' injury; the eleventh amendment bars the imposition of liability upon a state or municipality through respondeat superior. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In this case, since the State is responsible for the policies of the City Magistrates, it would be the entity liable if those policies caused plaintiffs to suffer money damages. The City would not be liable because its connection to the City Magistrates would fall under respondeat superior. We realize that the eleventh amendment does not bar an award of attorneys' fees against a party in the City's position; however, in our judgment, a party's ultimate liability for money damages is an appropriate consideration, under the circumstances, in determining apportionment of fees in a case involving injunctive relief. In this case, the State was the party with ultimate liability. The State also spent much more time litigating this issue than the City. It also filed appearances on behalf of the City Magistrates. The City only participated in this litigation to protect its small interest and to aid the court in its decision. Thus, the City's presence did not greatly increase the amount of time that plaintiffs' counsel expended.

The State is also more culpable than the County. The County's main tie to liability, the public defender, attempted to comply with *Conley*. Yet, this compliance was inadequate to protect plaintiffs' rights. Plaintiffs sought substantially verbatim transcripts of their preliminary hearings. To do this, plaintiffs needed the magistrates to record the proceedings and the magistrates refused. This refusal was the chief cause of plaintiffs' complaints. Thus, as between the County and the State, the State was the more culpable party.

As between the City and the County, the County is more culpable. Although the City Magistrates are more culpable in this litigation than the Public Defender, the City's connection to the City Magistrates is more tangential than the County's direct ties to the Public Defender. Like the State, the County would also be liable in a suit for money damages because of the control that it exerts over the Public Defender. Also, the County spent much more time defending this action than the City.

Finally, as between all of the parties, the State is in a better position to absorb the expense of such fees. Although this factor is accorded relatively little weight, *see Grendel's Den*, 749 F.2d at 960, it does support our conclusion to impose a greater burden on the State.

Based upon the facts that we have reviewed and found, and the conclusions of law, we conclude that equity requires that the State of Pennsylvania pay 70% or $31,570 and the City of Pittsburgh 11.12% or $5030. We also conclude that the County of Allegheny correctly estimated its liability at 18.8% or $8500.